Opinion
 

 SPARKS, J.
 

 In this case we consider the authority of the California State Personnel Board (Board) to receive postdismissal evidence of rehabilitation in mitigation of the discipline imposed by the appointing power. We hold that the Board has the authority to receive such evidence and in appropriate cases to reduce the discipline in light of this mitigating evidence.
 

 The Department of Parks and Recreation (Department) appeals from a judgment denying its petition for a writ of administrative mandate. (Code Civ. Proc., § 1094.5.) The unsuccessful petition sought an order directing the Board to set aside its decision in the matter of employee Gerald Duarte. After an administrative hearing the Board found that the Department had ample cause for dismissing Duarte from his employment at the time it acted, but modified the dismissal to a suspension based upon its finding of rehabilitation. The Department contends that the Board acted in excess of its jurisdiction, that its order of reinstatement constituted an abuse of discretion, and that the trial court should have remanded the matter to the Board in light of new evidence. We find these contentions unpersuasive and consequently shall affirm the judgment denying the petition for a writ of administrative mandate.
 

 Factual and Procedural Background
 

 Duarte was employed by the Department as a state park equipment operator in the American River District, which includes the Auburn State Recreation and Folsom Lake State Recreation Areas. He had been an employee of the Department since 1983. Duarte, who suffers from a severe hearing impairment in both ears, was working as a heavy equipment operator at the time of the misconduct in question. In April 1986 the Department notified Duarte that he was dismissed from his position effective April 22, 1986, for acts of immorality and for other failure of good behavior which causes discredit to the Department or to his employment. (Gov. Code, § 19572, subds.
 
 (l)
 
 & (t).) Specifically, the Department asserted: “By your
 
 *518
 
 own admission to two witnesses . . . you raped, sodomized, and orally copulated a nine year old child on September 16, 1985 and on at least one other occasion.”
 

 Duarte appealed his dismissal to the Board. The hearing was originally set for May 1986, but was continued with the agreement of the parties due to the pendency of criminal charges. (See Cal. Code Regs., tit. 2, § 52.5.) Eventually Duarte was convicted by guilty plea of oral copulation with a child. He was granted probation with a condition that he serve a term in the county jail. After disposition of the criminal charges, Duarte pursued the appeal from his dismissal. An administrative hearing was held in October 1988.
 

 At the administrative hearing Duarte stipulated that on September 16, 1985, he engaged in multiple incidents of illegal sexual conduct with his minor stepdaughter and that he was subsequently convicted, served a jail term, and was then on probation for oral copulation with a child. Garth Tanner, a deputy regional director with the Department, testified that it is Department policy not to hire and not to retain employees who have committed sex offenses with minors. He explained that field employees, such as Duarte, are subject to a lot of interaction with the public and that they work with a great deal of independence. In areas such as the Folsom Lake Recreational Area, people camp and bring their children to recreate and there are many opportunities for someone to commit sexual offenses. The Department refuses to employ convicted child molesters in such areas both because it does not wish to expose the public to the risk of this type of offense and because it would be discredited in the eyes of the public if it did so.
 

 Duarte, who had never previously been arrested or suffered any adverse action, expressed his regret over his misconduct with his stepdaughter. “I regret that I won’t be able to see her again for one thing. Regret what she might suffer for difficulty in her life from what happened, and everything.” He also recounted that he found it very difficult to find employment because of his hearing problem. “I have a hard time communicating with people I—how to express myself, and a lot of people think maybe I’m stupid or I’m ignoring, so they tell me that I walk away when in the middle of telling them something. I go in for job interview, I might misunderstand something. A lot of times makes things pretty difficult.”
 

 Duarte also presented the testimony of his therapists. Evan Sundby, a registered psychological assistant to Dr. Shawn Johnston, had been seeing Duarte for one hour per week. Mr. Sundby recounted that Duarte’s father was absent emotionally and often physically as well. His mother was very
 
 *519
 
 domineering. “So, when it came to the direct expression of anger, he felt threatened he couldn’t do it either to his father, or to his mother. So what [Duarte] did early on was to find a more passive disguised way to express that anger—getting that anger out, as we all have to do. That took shape early on in his childhood. Given his severe hearing impairment as an adolescent and a teenager, he also didn’t have the opportunity to develop social skills, and as a matter of fact, he’s rather awkward socially now. So, that when he entered his marriage with the victim’s mother, there was already in place this way of expressing this anger and disguised form more passively. His marriage, as [Duarte] said, was a bad marriage. He describes his wife as a binging alcoholic who would be absent for a week at a time. In fact, he described the situation where he’d find her in bed with other women, however, [Duarte], since he can’t express his anger openly and directly, and not being able to assert himself with women as he couldn’t with his mother, he expressed his anger differently; he molested his [stepdaughter.”
 

 With respect to future behavior Sundby believed that Duarte’s passive aggressive nature should be alleviated and that he should acquire better skills in expressing himself, particularly in his interactions with women. On the question of Duarte’s prognosis, Mr. Sundby related that “[w]e’re making a lot of progress in that area. He has some time to go. We’re looking into some issues regarding the way [of] expressing his anger, how that was certainly involved in the molest. And now, we’re looking at alternative ways, modeling more appropriate ways of expressing his anger than he did during the molest. I say his progress is good given continued psychotherapy.”
 

 Dr. Shawn Johnston, a licensed clinical psychologist, specializes in the evaluation and treatment of judicially referred clients. During the past decade he has performed approximately 1,500 to 2,000 psychological evaluations of child molesters in both Northern and Southern California. As a sex offender on probation, Duarte was receiving weekly therapy sessions supervised by Dr. Johnston. With respect to the causes for the crime, Dr. Johnston testified that there were numerous contributing factors. One of the goals of therapy was to help Duarte to gain insight into the full range of motives that were involved in the commission of the crime. Among the factors which Dr. Johnston identified are Duarte’s passive aggressive personality disorder, his emotional immaturity and social awkwardness, the misunderstanding and sexualizing an adult-child relationship, his anger and tendency to express it in inappropriate ways, and his unhappiness in his failing marriage. A passive aggressive person would tend to express anger in an indirect or disguised fashion and may engage in self-sabotaging behaviors. Dr. Johnston believed that Duarte’s offense was the product of his passive
 
 *520
 
 aggressive personality disorder and Ms emotional immaturity and social awkwardness wMch caused Mm to misunderstand and sexualize Ms relationsMp with Ms stepdaughter. In therapy they were helping Mm to understand the full range of motives that were involved in Ms crime. They were also helping Mm to develop the kind of social skills wMch would allow Mm to form a successful relationsMp with adult female partners.
 

 Despite Ms disorder, Duarte does not specifically desire sex with cMldren and hence is not a pedopMle. “He is obviously not, for example, a predator pedopMle. He is obviously not the kind of individual who is going to go out into the community and attempt to subdue or sexually exploit a cMld in a playground or a park, for example. The offense wMch Mr. Duarte committed against Ms step-daughter could have only occurred witMn the context of a close emotional relationsMp between Mm and the victim in wMch Mr. Duarte, in part because of Ms passive aggressive personality disorder, but also in part because of Ms emotional immaturity, Ms social awkwardness sexualized that relationsMp, misunderstood that relationsMp.”
 

 Given Duarte’s performance in their program over the past 14 months, Dr. Johnston was optimistic about Ms rehabilitation. Duarte has increased “Ms ability to express Ms anger, to express Ms frustration in a modulated fasMon, in a direct and honest fasMon. He is learning now to develop the kind of mature relationsMp with an adult partner. That is the major guarantee that an individual like tMs will not re-offend.” On the question of recurrence, Dr. Johnston thought “it’s extremely unlikely that there would be recurrence. In particular, I tMnk it’s almost completely unlikely that there could be any kind of commission of cMld molest of the sort that the Park Service well describes [as] the sort committed by [a] predator pedopMle, for example. Mr. Duarte was simply not that kind of offender.” Nor was it likely that Duarte would reoffend if returned to park service. “Mr. Duarte is clearly not a psychopath. He’s clearly not suffering from generalized criminal or antisocial tendencies. The cMld molest offense, as tragic and reprehensible as it was, represented Mr. Duarte’s only criminal record. I think that there is no significant likelihood of an antisocial act being committed by Mr. Duarte.”
 

 Based upon tMs evidence the administrative law judge (ALJ) prepared a proposed decision. There the ALJ concluded: “TMs case is very difficult to decide. If the case had come to hearing when originally scheduled the dismissal would no doubt have been affirmed. The Department was obligated to dismiss a person that committed such a sex crime. However, it is now over two years later. The case now involves treatment and rehabilitation. The circumstances are different. The appellant has served Ms sentence
 
 *521
 
 and competent psychologists consider him cured. Under such circumstances it is concluded that the appellant should be returned to work. The dismissal should be modified to a suspension without pay for
 
 2Vz
 
 years.” The proposed decision of the ALJ was adopted by the Board as its decision in the case.
 

 The Department filed a petition for writ of administrative mandamus. The trial court concluded that the Board acted lawfully when it heard and considered evidence concerning Duarte’s posttermination conduct, including testimony regarding his therapy and prognosis. It further concluded that the Board’s decision modifying Duarte’s dismissal to suspension for two and one-half years did not constitute an abuse of discretion and was supported by substantial evidence. Finally, the court ruled that it was not required to remand the matter to the Board to consider a posthearing declaration executed by Duarte because it did not constitute relevant evidence. In conformity with these rulings, the trial court denied the writ petition and this appeal followed.
 

 Discussion
 

 I
 

 Jurisdiction of the Board
 

 The Board is a statewide administrative agency which is created by, and derives its adjudicatory power from, the state Constitution. (Cal. Const., art. VII, §§ 2, 3 [hereafter references to articles are to the articles of the California Constitution], See
 
 Gee
 
 v.
 
 California State Personnel Bd.
 
 (1970) 5 Cal.App.3d 713, 717 [85 Cal.Rptr. 762].) Under that constitutional grant, the Board is empowered to “review disciplinary actions.” In undertaking that review, the Board acts in an adjudicatory capacity. “The State Personnel Board is an agency with adjudicatory powers created by the California Constitution.”
 
 (Kristal
 
 v.
 
 State Personnel Bd.
 
 (1975) 50 Cal.App.3d 230, 236-237 [123 Cal.Rptr. 512].) As such the Board acts much as a trial court would in an ordinary judicial proceeding. Thus, the Board makes factual findings and exercises discretion on matters within its jurisdiction. On review the decisions of the Board are entitled to judicial deference. The record must be viewed in a light most favorable to the decision of the Board and its factual findings must be upheld if they are supported by substantial evidence.
 
 (Washington
 
 v.
 
 State Personnel Bd.
 
 (1981) 127 Cal.App.3d 636, 639-640 [179 Cal.Rptr. 637].) In addition, the Board’s exercise of discretion must be upheld unless it abuses that discretion.
 
 (Nightingale
 
 v.
 
 State Personnel Board
 
 (1972) 7 Cal.3d 507, 515 [102 Cal.Rptr. 758, 498 P.2d 1006]; see
 
 *522
 

 People
 
 v.
 
 Russel
 
 (1968) 69 Cal.2d 187, 194 [70 Cal.Rptr. 210, 443 P.2d 794].)
 

 But the decisions of the Board are entitled to judicial deference only so long as the Board acts within its legal jurisdiction. An administrative agency has only such powers as have been conferred upon it by constitution or statute.
 
 (Ferdig
 
 v.
 
 State Personnel Bd.
 
 (1969) 71 Cal.2d 96, 103 [77 Cal.Rptr. 224, 453 P.2d 728].) An administrative agency may not validly act in excess of, or in violation of, the powers conferred upon it.
 
 (Id.
 
 at p. 104.) If it does so the action taken is void.
 
 (Ibid.)
 
 And such action is subject to being set aside through a proceeding in administrative mandate. (Code Civ. Proc., § 1094.5, subd. (b).)
 

 The Board then is a body of special and limited jurisdiction that derives its powers through the state Constitution and implementing statutory law.
 
 (Ferdig
 
 v.
 
 State Personnel Bd., supra,
 
 71 Cal.2d at p. 105.) The Constitution sets forth the powers and duties of the Board in this fashion: “The board shall enforce the civil service statutes and, by majority vote of all its members, shall prescribe probationary periods and classifications, adopt other rules authorized by statute, and review disciplinary actions.” (Art. VII, § 3, subd. (a).) Pursuant to this provision the Board’s authority in disciplinary matters is limited to that of reviewing disciplinary action taken by appointing authorities.
 
 (Skelly
 
 v.
 
 State Personnel Bd.
 
 (1975) 15 Cal.3d 194, 201-202 [124 Cal.Rptr. 14, 539 P.2d 774];
 
 California Sch. Employees Assn.
 
 v.
 
 Personnel Commission
 
 (1970) 3 Cal.3d 139, 143-144 [89 Cal.Rptr. 620, 474 P.2d 436], especially fn. 2.)
 
 [1]
 

 The Board’s authority over disciplinary matters may be understood when placed in a historical perspective. Before the enactment of civil service laws it was accepted that the power to discharge an employee was a necessary incident of the power to appoint. Thus, it was held that an appointing power had the absolute power to discharge a state employee with or without cause.
 
 (Fee
 
 v.
 
 Fitts
 
 (1930) 108 Cal.App. 551, 556 [291 P. 889];
 
 Cronin
 
 v.
 
 Civil Service Com.
 
 (1925) 71 Cal.App. 633, 636 [236 P. 339].) The enactment of civil service laws placed restrictions upon the authority of an appointing power to discharge or take other adverse action against an
 
 *523
 
 employee.
 
 [2]
 
 However, these laws did not operate to strip an appointing power of all authority over adverse actions; rather, the appointing power retained authority except as specifically restricted by law.
 
 (Cronin
 
 v.
 
 Civil Service Com., supra,
 
 71 Cal.App. at p. 636.)
 

 The enactment of our state civil service laws restricted an appointing power’s authority to impose adverse action in two ways. First, employees were given the substantive right to continued employment during good behavior and the guarantee that no adverse action would be taken without cause. (See Gov. Code, former § 19500 [now § 19996];
 
 id.,
 
 § 19572.) Second, employees were given procedural rights in order to vindicate their substantive employment rights. It is now accepted that the procedural requisites for the imposition of discipline must accord employees due process of law.
 
 (Skelly
 
 v.
 
 State Personnel Bd., supra,
 
 15 Cal.3d at p. 208.)
 

 Through the years the procedures for imposing discipline have varied. When the Legislature enacted a civil service act in 1913, it created a civil service commission. (Stats. 1913, ch. 590, § 2, p. 1035.) With respect to removing an employee for cause, the commission was given joint jurisdiction with the appointing power and either body could take action against an employee. In the event the appointing power took action then the appointing power would hold a hearing and render a decision. (Stats. 1913, ch. 590, § 14, p. 1044.) If charges were brought before the commission then the commission held the hearing and rendered the decision.
 
 (Ibid.)
 
 Neither body could review a decision of the other and in the event both rendered decisions in the matter the decision least favorable to the employee was controlling.
 
 (Ibid.)
 

 In 1929 the Legislature changed the procedures for employee discipline. It was provided that an appointing power could file charges against an employee seeking his or her dismissal. (Stats. 1929, ch. 136, § 2, pp. 252-253.) The failure of the employee to request and follow through with a hearing or investigation by the civil service commission would be deemed an admission of the charges.
 
 (Ibid.)
 
 If the employee so requested, the commission would hold a hearing and render a final decision in the matter.
 
 (Ibid.)
 

 In 1934 the Board was created by constitutional amendment. (Former art. XXIV, Stats. 1935, pp. Ixxxvi-lxxxvii.) The Board was “vested with all of the powers, duties, purposes, functions, and jurisdiction which are now or hereafter may be vested in any other State officer or agency under . . . any and all other laws relating to the State civil service as said laws may now exist or may hereafter be enacted, amended or repealed by the Legislature.”
 
 *524
 
 (Former art. XXIV, § 3, subd. (a), Stats. 1935, p. lxxxvii.) Under the terms of this amendment, “dismissals, demotions, suspensions, and other punitive action for or in the State civil service shall be and remain the duty of the board and a vote of a majority of the members of said board shall be required to make any action with respect thereto effective.” (Former art. XXIV, § 3, subd. (c), Stats. 1935, p. lxxxvii.) In 1937 the Legislature enacted legislation to implement the constitutional provision. (Stats. 1937, ch. 753.) With respect to discipline it retained the prior procedure, that is, the appointing power would be required to file charges with the Board which would hear and determine the matter. (Stats. 1937, ch. 753, § 173, pp. 2106-2107.)
 

 This procedure for imposing discipline was retained until 1949. (Stats. 1939, ch. 898, § 17, pp. 2512-2513; Stats. 1943, ch. 796, § 6, pp. 2584-2585; Stats. 1943, ch. 797, § 2, pp. 2587-2588; Stats. 1945, ch. 123, § 1, pp. 568-569.) In that year the Legislature adopted the disciplinary scheme which prevails today. (Stats. 1949, ch. 1416, §§4-19, pp. 2468-2471.) Under this scheme, the appointing power has authority to take disciplinary action, subject to appeal to the Board. (Gov. Code, § 19574.) If the employee fails to request or to prosecute an appeal to the Board, then the appointing power’s action is final. (Gov. Code, § 19575.)
 

 In 1970 the constitutional provision with respect to the Board was amended. As amended, the Constitution provided, as it does now, that “[t]he board shall enforce the civil service statutes and, by majority vote of all its members, shall prescribe probationary periods and classifications, adopt other rules authorized by statute, and review disciplinary actions.” (Former art. XXIV, § 3, subd. (a), now art. VII, § 3, subd. (a), Stats. 1970, p. A-94.) That part of the amendment enacting the new clause empowering the Board to “enforce the civil service statutes” was, according to the California Constitution Revision Commission, “a restatement without change in meaning of existing Section 3. This provision is intended to insure that the board and no one else shall enforce statutes relating to the civil service.” (Cal. Const. Revision Com. (Feb. 1966) p. 112 [proposed revision of arts. Ill, IV, V, VI, VII, VIII & XXXIV].) The balance of the subdivision “restates that part of Section 2 (c) which relates to powers and duties of the board, except that the provision for probationary periods is new.”
 
 (Ibid.)
 
 Thus, the present provision for “review [of] disciplinary actions” restates the former provisions which vested the Board with power over “dismissal, demotions, suspensions and other punitive action” and directed it by majority vote to “make any action with respect thereto effective.” Likewise, the ballot pamphet for the 1970 election suggests the change in the constitutional provisions worked no diminution of the Board’s antecedent authority. “It continues the
 
 *525
 
 independent State Personnel Board to enforce civil service statutes and to review disciplinary actions.” (Ballot Pamp., Proposed Amends, to Const., Gen. Elec. (Nov. 3, 1970), argument in favor of Prop. 14, p. 24.)
 

 The Board’s constitutional authority to review disciplinary action is amplified in the civil service statutes. The “appointing power” (Gov. Code, § 18524) may take adverse action against an employee for one or more of the specified causes by service of written notice. (Gov. Code, § 19574.) The employee may then file a written answer with the Board. (Gov. Code, § 19575.) The answer triggers a review by the Board which consists of a hearing (Gov. Code, § 19578), and a decision in writing (Gov. Code, § 19582). It can thus be seen that under our statutory scheme for employee discipline the appointing power is vested with the initial authority to determine and impose appropriate discipline. The Board in turn is vested with the authority to review the appointing power’s action. But as we have seen, the Board’s reviewing authority is not limited to that equivalent to appellate judicial review. The Board is entitled to weigh the evidence and determine the facts and to exercise discretion in determining the sufficiency of the charges.
 

 While the Board’s authority is broad, it is, of course, not plenary. Government Code section 19583 provides in relevant part: “The adverse action taken by the appointing power shall stand unless modified or revoked by the board. If the board finds that the cause or causes for which the adverse action was imposed were insufficient or not sustained, or that the employee was justified in the course of conduct upon which the causes were based, it may modify or revoke the adverse action . . . .” Under this statutory scheme, the Board may find that the cause for discipline was “sustained” but was “insufficient” to justify the penalty imposed. There are thus three bases for modification or revocation of the appointing power’s imposition of discipline: (1) the evidence does not establish the fact of the alleged cause for discipline; (2) the employee was justified; or (3) the cause for discipline is proven but is insufficient to support the level of punitive action taken. Unless one of these factors is present the appointing power’s action must stand.
 

 In view of the broadness of the bases for interference with an appointing power’s disciplinary action and the authority conferred upon the Board when acting within its jurisdiction, the limitation upon the Board’s authority is seldom at issue. This case presents one of the rare instances where those limitations are central to its resolution. In this case there was no question of the truth of the charges; in fact, at the hearing Duarte stipulated to their validity. Likewise, there was no suggestion of justification. Thus the
 
 *526
 
 only issue before the Board was whether, under all the circumstances, the proven charges were sufficient to support the Department’s decision to dismiss Duarte. That issue turns upon whether the Board was entitled to consider postdismissal evidence of rehabilitation.
 

 Duarte and the amicus curiae California Association of Highway Patrolmen argue that the Board was entitled to consider evidence of rehabilitation in mitigation of the discipline imposed. They argue that in determining whether the adverse action by the appointing power should be modified or rescinded, the Board may admit and consider evidence of postdismissal rehabilitation of the disciplined employee. Having properly considered this evidence of rehabilitation, the argument continues, the Board was entitled to conclude that a severe penalty was justified but not the ultimate sanction of dismissal. The Department retorts that Government Code section 19583 does not permit the Board to modify a disciplinary action where it has made findings, sustained by substantial evidence, that the causes for the adverse action were sufficient at the time it was taken.
 

 We agree that the evidence of postdismissal rehabilitation of the disciplined employee is admissible before the Board and may properly be considered by it for purposes of determining whether the penalty assessed was appropriate under all of the circumstances. In the seminal case of
 
 Skelly
 
 v.
 
 State Personnel Bd., supra,
 
 15 Cal.3d 194, the high court held that the likelihood of recurrence of the misconduct is a relevant factor for the Board to consider in weighing the propriety and severity of the discipline imposed.
 
 (Id.
 
 at p. 218.) “In considering whether such abuse [of discretion] occurred in the context of public employee discipline, we note that the overriding consideration in these cases is the extent to which the employee’s conduct resulted in, or if repeated is likely to result in ‘[h]arm to the public service.’ Other relevant factors include the circumstances surrounding the misconduct and the likelihood of its recurrence.”
 
 (Ibid.,
 
 citations omitted.)
 

 Evidence of postdismissal rehabilitation is relevant to the question of whether there is a likelihood of repeated misconduct by the employee. Evidence of rehabilitation may tend to prove that the misconduct is not likely to recur. Thus, in
 
 Blake
 
 v.
 
 State Personnel Board.
 
 (1972) 25 Cal.App.3d 541 [102 Cal.Rptr. 50], the court held that “[i]n determining whether the misconduct warranted dismissal, consideration should be given to the circumstances surrounding the misbehavior, the degree to which it affected the public service, and the likelihood of its recurrence.”
 
 (Id.
 
 at pp. 553-554.) There a supervising deputy labor commissioner confronted two labor law enforcement attorneys while off duty and pointed a gun at one of them, telling him in obscene terms to stay away from a female attorney with
 
 *527
 
 whom the supervisor had a relationship. In holding that the penalty of dismissal was excessive, the reviewing court considered evidence of rehabilitation both before and after the employee’s dismissal. The court noted that “while the circumstances of its occurrence by no means excused [the supervisor’s] reprehensible conduct, it must be recalled that it did occur after a social evening during which the group had had several drinks during dinner and later at a bar. The following morning [the supervisor] called the two attorneys, apologized, and acknowledged to them the fact that his conduct the night before was unjustified and inexcusable and that it would not recur. At the hearing petitioner testified that his relationship with the female attorney had been terminated, that he had sold his gun and no longer owned one and gave assurances that the incident would not recur.”
 
 (Id.
 
 at p. 554.)
 

 Indeed, it has even been held that an administrative tribunal may consider on remand posthearing evidence of rehabilitation in mitigation of the penalty.
 
 (Toyota of Visalia, Inc.
 
 v.
 
 New Motor Vehicle Bd.
 
 (1987) 188 Cal.App.3d 872, 880 [233 Cal.Rptr. 708].) In that case, the appellate court ruled that in an administrative mandamus proceeding brought by an automobile dealer to review a penalty imposed by the New Motor Vehicle Board for Vehicle Code violations, evidence in mitigation occurring after the original hearing may be considered by the board in arriving at the proper penalty.
 
 (Ibid.)
 
 In opposition to this line of authority, the Department has not cited a single case which holds or suggests that postdismissal evidence of rehabilitation is not admissible before the Board on the question of the propriety of the discipline imposed. Accordingly, we conclude that such evidence is admissible and may properly be considered by the Board.
 

 This does not mean, however, that the Board may modify a dismissal or other disciplinary action solely upon postdismissal evidence of rehabilitation. What it does mean is that the Board may consider that evidence along with all the other circumstances of the case in determining whether the penalty assessed by the appointing power is just and proper. Thus, the fact that the penalty was appropriate at the time it was imposed by the appointing power does not prevent the Board from finding that the penalty is now excessive when all the circumstances of the case are considered, including the employee’s rehabilitation. Such a determination by the Board would constitute a finding that the cause for the particular adverse action is now insufficient and hence would justify modifying the adverse action under the authority conferred upon the Board under Government Code section 19583.
 

 In short, the Board obviously has broad authority to consider mitigating factors in determining the sufficiency of the cause for discipline. Although
 
 *528
 
 the Board’s finding on the point in this case is not entirely free from doubt, fairly read and viewed most favorably to the decision we conclude that the Board found that the Department imposed an excessive punishment when considered in light of the postdismissal evidence of rehabilitation. It is true that in the absence of this mitigating evidence of rehabilitation, the dismissal would have been upheld by the Board. Indeed, the Board itself acknowledged, “[i]f the case had come to hearing when originally scheduled the dismissal would no doubt have been affirmed. The Department was obligated to dismiss a person that committed such a sex crime.” But the case did not come to hearing as scheduled; instead, “it is now over two years later.” In its present posture before the Board, the “case now involves treatment and rehabilitation.” In short, the “circumstances are different.” Since the Board was entitled to consider this evidence in assessing whether the punishment was appropriate, the only remaining question is whether the Department abused its discretion by modifying the dismissal to suspension without pay for two and one-half years.
 

 II
 

 Abuse of Discretion
 

 The Department argues that the Board abused its discretion by ordering a convicted child molester returned to work in the state parks. Duarte counters that the Board’s findings that his misconduct would not recur is supported by substantial evidence. Given that finding, he further contends, the Department did not abuse its discretion in reducing the severity of his punishment. We agree that under the facts expressly and inferentially found by the Board no abuse of discretion occurred here.
 

 We begin by emphasizing the distinction between the substantial evidence rule and the abuse of discretion standard. The substantial evidence rule measures the quantum of proof adduced at a hearing and assesses whether the matters at issue have been established by a solid, reasonable and credible showing. “ ‘Substantial evidence’ must be of ponderable legal significance. Obviously the word cannot be deemed synonymous with ‘any’ evidence. It must be reasonable in nature, credible, and of solid value; it must actually be ‘substantial’ proof of the essentials which the law requires in a particular case.”
 
 (Yancey
 
 v.
 
 State Personnel Bd.
 
 (1985) 167 Cal.App.3d 478, 482-483 [213 Cal.Rptr. 634], citations and some internal quotation marks omitted. See also
 
 People
 
 v.
 
 Morris
 
 (1988) 46 Cal.3d 1, 19 [249 Cal.Rptr. 119, 756 P.2d 843];
 
 Estate of Teed
 
 (1952) 112 Cal.App.2d 638, 644 [247 P.2d 54]; Cal. Administrative Mandamus (Cont.Ed.Bar 1989) Scope of Review Under CCP § 1094.5, § 4.137, pp. 183-184.) But the substantial
 
 *529
 
 evidence rule “does not require that the evidence appear to the appellate court to outweigh the contrary showing.”
 
 (People
 
 v.
 
 Javier A.
 
 (1985) 38 Cal.3d 811, 819 [215 Cal.Rptr. 242, 700 P.2d 1244].)
 

 The abuse of discretion standard, on the other hand, measures whether, given the established evidence, the act of the lower tribunal falls within the permissible range of options set by the legal criteria. “The scope of discretion always resides in the particular law being applied, i.e., in the ‘legal principles governing the subject of [the] action . . . .’ Action that transgresses the confines of the applicable principles of law is outside the scope of discretion and we call such action an ‘abuse’ of discretion.”
 
 [3]
 

 (City of Sacramento
 
 v.
 
 Drew, supra,
 
 207 Cal.App.3d 1287, 1297.) Thus, one deals with evidentiary proof while the other is concerned with legal principles. In cases such as the one under review, these two standards bear a reciprocal relationship. The Board has no discretion to impose any disciplinary punishment on a public employee unless its finds on the basis of substantial evidence that grounds for adverse action have been established.
 
 (Coelho
 
 v.
 
 State Personnel Bd.
 
 (1989) 209 Cal.App.3d 968, 971 [257 Cal.Rptr. 557].) By the same token, in the absence of any substantial evidence supporting its findings, the Board has no discretion to modify or revoke the discipline imposed by the appointing power. (Gov. Code, § 19583. See also
 
 Cullinan
 
 v.
 
 Superior Court
 
 (1938) 24 Cal.App.2d 468, 472 [75 P.2d 518].)
 

 Both of these standards of review entail considerable deference to the fact-finding tribunal. Under the familiar substantial evidence rule, the reviewing court must view the disputed facts in the light most favorable to the Board, giving it every reasonable inference and resolving all conflicts in its favor.
 
 (Flowers
 
 v.
 
 State Personnel Bd.
 
 (1985) 174 Cal.App.3d 753, 758 [220 Cal.Rptr. 139].) Similarly, under an abuse of discretion review, the appellate court may not supplant the Board’s discretion with its own. “Notwithstanding the principle . . . that an administrative body does not have
 
 *530
 
 absolute and unlimited power, but rather is bound to exercise legal discretion, an appellate court is no more free than a trial court to substitute its discretion for that of the administrative agency as to the degree of punishment imposed.”
 
 (Caveness
 
 v.
 
 State Personnel Bd.
 
 (1980) 113 Cal.App.3d 617, 631 [170 Cal.Rptr. 54]; see also Cal. Administrative Mandamus,
 
 supra,
 
 Scope of Review Under CCP § 1094.5, § 4.104, p. 161.) This is particularly true in those circumstances where reasonable minds may differ. Thus, as we noted in
 
 Thompson
 
 v.
 
 State Personnel Bd.
 
 (1988) 201 Cal.App.3d 423, 427 [247 Cal.Rptr. 210], “[a]n appellate court may not substitute its judgment for that of the Board, even if another equally reasonable determination might have been made.” Indeed, “[t]he fact that reasonable minds may differ as to the propriety of the penalty imposed fortifies the conclusion that the administrative body acted within the area of its discretion.”
 
 (Flowers
 
 v.
 
 State Personnel Bd., supra,
 
 174 Cal.App.3d at p. 761.)
 

 Under the administrative mandamus statute, an abuse of discretion “is established if the respondent [Board] has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence.” (Code Civ. Proc., § 1094.5, subd. (b).) Aside from the Department’s claims that the Board could not receive and consider posttermination mitigating evidence, a claim we have already rejected, its abuse-of-discretion argument asserts that the Board’s decision is not supported by the findings and the findings are not supported by the evidence. It first claims that the Board completely ignored undisputed evidence that reinstatement of a convicted child molester would adversely affect public confidence in the state parks. It next argues the finding that Duarte is cured does not contradict one of the justifications for his dismissal and in any event is not supported by substantial evidence.
 

 As we have noted, the legal principles or criteria which govern the Board’s discretion over punishment in this case center on the harm done to the public service by the misconduct, given the circumstances of its commission and the likelihood of its recurrence. “In considering whether such abuse occurred in the context of public employee discipline, we note that the overriding consideration in these cases is the extent to which employee’s conduct resulted in, or if repeated is likely to result in, ‘[h]arm to the public service.’ Other relevant factors include the circumstances surrounding the misconduct and the likelihood of its recurrence.”
 
 (Skelly
 
 v.
 
 State Personnel Bd., supra,
 
 15 Cal.3d at p. 218, citations omitted. See also
 
 Thompson
 
 v.
 
 State Personnel Bd., supra,
 
 201 Cal.App.3d at p. 429;
 
 Flowers
 
 v.
 
 State Personnel Bd., supra,
 
 174 Cal.App.3d at p. 761.)
 

 
 *531
 
 With these standards in mind, we turn to the evidence supporting the Board’s findings. As we have noted, the Board inferentially found that in light of the evidence of rehabilitation the Department imposed an excessive punishment. In support of its decision the Board made these crucial findings: “After [Duarte’s] conviction he was judicially referred to Dr. Johnson a clinical psychologist for treatment. Dr. Johnson and his assistant both testified that [Duarte] responded well to therapy and is now considered cured. They believe that his crime was the product of an unhappy marriage and that [Duarte] would never again repeat such an offense.”
 

 Thus, the Board based its decision upon the views of the expert witnesses that Duarte had been significantly helped by therapy and that he would never again repeat such an offense. These findings are supported by substantial evidence.
 

 Although the evidence which we have previously recounted may not have completely supported the Board’s finding that Duarte is “now considered cured,” it did establish that Duarte is not a pedophile, and does not suffer from any generalized criminal or antisocial tendencies. It also established that his crime was situational, did not occur while on duty, and could only have occurred within the context of a close relationship with the victim. It further established that Duarte had never been previously arrested and had no prior adverse action. Finally, the evidence established that his prognosis is good and the likelihood of a recurrence of the misconduct is extremely remote.
 

 Given this established evidence, the question is whether the Board abused its discretion in reducing the adverse action from dismissal to suspension without pay for two and one-half years. The types of punitive actions imposed or sustained by the Board for various types of misconduct has ranged along a continuum of severity from a temporary reduction in salary to suspension to dismissal. (See, e.g.,
 
 Yancey
 
 v.
 
 State Personnel Bd., supra,
 
 167 Cal.App.3d at pp. 485-487, & fn. 4 [collecting cases].) In some cases involving child molestation, the Board has upheld the dismissal of the offending employee. Thus, for example, in
 
 Fout
 
 v.
 
 State Personnel Bd.
 
 (1982) 136 Cal.App.3d 817 [186 Cal.Rptr. 452], a case involving a California Highway Patrolman, the Board upheld the dismissal of the officer who committed acts of molestation with two teenage girls against their will and then refused to cooperate with the investigation of his conduct. The reviewing court held that under all the circumstances the Board did not abuse its discretion in terminating Fout’s employment, citing the rule when reasonable minds may differ as to the propriety of the punishment, that fact “ ‘fortifies
 
 *532
 
 the conclusion that the administrative body acted within the area of its discretion.’ ”
 
 (Id.
 
 at p. 822.) The
 
 Fout
 
 court emphasized the offender was a peace officer and that his was not the type of misconduct that might be corrected with a lesser form of discipline such as a suspension or demotion because the “likelihood of its recurrence always exists, especially since in this case, it had already happened on more than one occasion with more than one young girl.”
 
 (Id.
 
 at p. 821.) Here, in contrast, the evidence established that there was no significant likelihood of a recurrence. To be sure, Duarte’s misconduct was egregious, resulted in some harm to the Department and necessarily warranted some level of punitive action. But reasonable minds could differ on the severity of the appropriate punishment under the facts of this case and we cannot hold that the Board abused its discretion by inflicting some discipline less than dismissal. The Department’s claim that the Board completely ignored its evidence that Duarte’s reinstatement would adversely affect public confidence in the state parks is belied by the record. The Board expressly took note of that evidence in its findings. It nevertheless determined that suspension was appropriate in this case when all of relevant factors were weighed, including the element of public confidence. Obviously, the Board’s decision in this case was not compelled; the Board itself noted that the case was “very difficult to decide.” But difficult decisions are what discretion is all about. Given our limited authority to interfere with the discretion of the Board in its assessment of the appropriate penalty, we cannot say that termination was the only discipline which the Board could lawfully impose. The fact that dismissal was “another equally reasonable determination [which] might have been made”
 
 (Thompson
 
 v.
 
 State Personnel Bd., supra,
 
 201 Cal.App.3d at p. 427), does not authorize this court to substitute its judgment for that of the Board. Just as we cannot interfere with the imposition of a penalty by an administrative tribunal simply because it appears too harsh in our evaluation of the circumstances
 
 (Cadilla
 
 v.
 
 Board of Medical Examiners
 
 (1972) 26 Cal.App.3d 961, 966 [103 Cal.Rptr. 455]), neither can we nullify a penalty decision simply because it may appear too lenient to us. The Board’s decision was neither irrational nor beyond the broad range of disciplinary options accorded it under the controlling criteria. It is therefore entitled to have its permissible exercise of discretion upheld.
 

 Ill
 

 Remand for Reconsideration
 

 The Department finally contends that the trial court abused its discretion in failing to remand the case to the Board for reconsideration in
 
 *533
 
 light of new evidence. In its writ petition the Department alleged that Duarte had presented evidence after the administrative hearing which demonstrated that several of the premises upon which his therapists concluded that he was rehabilitated no longer exist. This evidence, it was alleged, had recently been provided by Duarte, was not available for the hearing and consequently could not with reasonable diligence have been produced there. The evidence consisted of a declaration that Duarte filed in a related action seeking his reinstatement. The declaration was dated March 3, 1989, some five months after the hearing before the ALJ. There Duarte averred that since his dismissal he has been working on a ranch without any medical benefits. He also declared that on February 1, 1989, he hurt his back so severely that he had trouble moving and bending. His wages cover just the necessities of life for himself and his 16-year-old son. He further asserted that because of his long working hours on the ranch he was unable to spend much time with his son or to provide him with the supervision and guidance he needs. He then declared: “As a further consequence of my long working hours and fear of losing my job, for the past four weeks I have been unable to schedule the weekly counseling sessions which are part of my probation requirements still in force. Prior to the last four weeks I have been attending therapy weekly for over a year and a half. My psychologist is Dr. Shawn Johnston. His assistant is Evan Sundby. Mr. Sundby informed me on February 27, 1989 that he and Dr. Johnston are unable to see me in the mid-evening to accommodate my work schedule; and I am afraid to ask my current employer for time off during the day for fear of losing my job.”
 

 The trial court ruled that it “is not required to consider or to order respondent Board to consider on remand statements contained in a declaration by real party [Duarte] concerning his failure to attend therapy for a number of weeks, injuries he may have suffered, and his relationship with his son, as the Court finds such statements do not constitute relevant evidence. (See Code Civ. Proc., § 1094.5(e).)”
 

 The Department argues this evidence that Duarte was not continuing with the prescribed therapy and was subject to stress in his relationship with his son as well as from his possible health problems adversely affects the factors on which Dr. Johnston based his optimistic prognosis for Duarte’s rehabilitation. Thus, it argues the court abused its discretion in failing to remand the matter to the Board for reconsideration in light of the declaration. Duarte counters that his declaration shows only that he was unable to schedule therapy at that time because of his long working hours, not that he was abandoning therapy. Moreover, he contends that the claim of stress is entirely speculative and without any evidentiary support.
 

 
 *534
 
 Code of Civil Procedure section 1094.5, subdivision (e) provides: “Where the court finds that there is relevant evidence which, in the exercise of reasonable diligence, could not have been produced or which was improperly excluded at the hearing before respondent [Board], it may enter judgment as provided in subdivision (f) remanding the case to be reconsidered in the light of that evidence; or, in cases in which the court is authorized by law to exercise its independent judgment on the evidence, the court may admit the evidence at the hearing on the writ without remanding the case.” In
 
 Toyota of Visalia, Inc.
 
 v.
 
 New Motor Vehicle Bd., supra,
 
 188 Cal.App.3d 872, the court noted that “[t]he decisions discussing section 1094.5, subdivision (e), have indicated that the section operates as a limitation upon the court’s authority to admit new evidence. The general rule is that a hearing on a writ of administrative mandamus is conducted solely on the record of the proceeding before the administrative agency. Section 1094.5 contains limited exceptions to this rule.”
 
 (Id.
 
 at p. 881, citation omitted. See also
 
 City of Fairfield
 
 v.
 
 Superior Court
 
 (1975) 14 Cal.3d 768, 774, fn. 6 [122 Cal.Rptr. 543, 537 P.2d 375].) Thus, Code of Civil Procedure section 1094.5, subdivision (e) “limits the admission of evidence additional to the administrative record to ‘relevant evidence which, in the exercise of reasonable diligence, could not have been produced or which was improperly excluded at the hearing . . . .’”
 
 (Id.
 
 at p. 775.)
 

 But it is one thing to say that preexisting evidence which was excluded or could not be produced with diligence should be reviewable; it is quite another to say that evidence of events occurring after the hearing should also be reviewable. One of the evident purposes of Code of Civil Procedure section 1094.5, subdivision (e) is curative. It seeks to correct a lacuna in the record by closing it with the evidence which would have been presented to the tribunal had it been producible with reasonable diligence or had it not been wrongfully excluded. Nevertheless, the statute has not been limited to evidence in existence at the time of the administrative hearing. “A second common type of newly produced evidence under CCP § 1094.5(e) is relevant evidence of events that transpired after the original hearing or evidence that did not exist at the time of the original hearing.” (Cal. Administrative Mandamus,
 
 supra,
 
 § 12.12, pp. 381-382.) Thus, it has been held in some circumstances that relevant evidence of events transpiring after the date of the agency’s decision may be considered under this subdivision. (See, e.g.,
 
 Toyota of Visalia, Inc.
 
 v.
 
 New Motor Vehicle Bd., supra,
 
 188 Cal.App.3d at p. 881-883;
 
 Curtis
 
 v.
 
 Board of Retirement
 
 (1986) 177 Cal.App.3d 293, 299 [223 Cal.Rptr. 123];
 
 Windigo Mills
 
 v.
 
 Unemployment Ins. Appeals Bd.
 
 (1979) 92 Cal.App.3d 586, 596-597 [155 Cal.Rptr. 63].) As the
 
 Windigo Mills
 
 court explained it in dictum, “[w]hen the Legislature
 
 *535
 
 granted the superior court the discretion to receive ‘relevant evidence which, in the exercise of reasonable diligence, could not have been produced at the administrative hearing,’ it reasonably may be inferred that it meant to authorize the receipt of evidence of events which took place after the administrative hearing. ... We conclude that the superior court is authorized under section 1094.5, subdivision (e) to receive relevant evidence of events which transpired after the date of the agency’s decision.” (92 Cal.App.3d at pp. 596-597.)
 

 But even if posthearing evidence is admissible under Code of Civil Procedure 1094.5, subdivision (e) in some circumstances, there are substantive limitations to its admission. This type of belated evidence ordinarily would not be admissible to establish new misconduct because it would fall outside the dates of charges contained in the accusatory notice. The notice of adverse action must be served on the employee prior to the effective date of the action and must contain, among other things, “a statement of the reasons therefor in ordinary language.” (Gov. Code, § 19574.) Such a statement is adequate if it “is sufficiently specific in regard to circumstances and date to allow the accused to identify the transaction and understand the nature of the alleged offense to enable him to present his defense thereto, . . .”
 
 (Gipner
 
 v.
 
 State Civil Service Com.
 
 (1936) 13 Cal.App.2d 100, 107 [56 P.2d 535].) Since the charged misconduct precedes the hearing, evidence of further misconduct occurring after that hearing would ordinarily not be relevant to the charges.
 

 These limitations, however, would not apply to posthearing evidence of mitigation. Nevertheless, the trial court did not err in failing to remand the case for further consideration in light of Duarte’s posthearing declaration. First of all, part of the declaration was not relevant. Relevant evidence is defined as “evidence, including evidence relevant to the credibility of a witness or hearsay declarant, having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action.” (Evid. Code, § 210.) Needless to say, speculation and conjecture do not constitute relevant evidence because they do not have any tendency to prove or disprove facts. Thus, as to those portions of the declaration relating to Duarte’s injury and his relationship with his son, the trial court correctly refused to remand them to the Board for reconsideration. The claim that Duarte was under stress because of them such that the likelihood of a recurrence of the sexual misconduct on reinstatement would be increased was utterly speculative.
 

 
 *536
 
 That leaves the portion concerning his discontinuation of therapy. Although this evidence appears relevant, the trial court did not abuse its discretion in refusing to remand the matter. Not every relevant piece of evidence occurring after the administrative hearing and relating to mitigation justifies a remand. Even weak and discredited evidence may meet the test of relevancy if it tends to prove some fact if believed. “Evidence is relevant when[,] no matter how weak it may be, it tends to prove the issue before the [fact finder].”
 
 (People
 
 v.
 
 Slocum
 
 (1975) 52 Cal.App.3d 867, 891 [125 Cal.Rptr. 442].) If the Department’s position were adopted, then trial courts in administrative mandamus proceedings would be compelled to remand every case to the administrative tribunal each time some posthearing evidence, no matter how weak or discredited, was presented on the question of punishment. That exaggerated position is undermined by the wording of the statute itself. By its terms the statute does not compel the trial court to remand the case simply because some posthearing but marginally relevant evidence has come to light. Instead, it authorizes but does not mandate the court to remand the case when it finds relevant evidence which, in the exercise of reasonable diligence, could not have been produced at the administrative hearing. In such a case, the court “may enter judgment. . . remanding the case to be reconsidered in the light of that evidence.” (Code Civ. Proc., § 1094.5, subd. (e), italics supplied.) As we did in
 
 City of Sacramento
 
 v.
 
 Drew, supra,
 
 207 Cal.App.3d 1287, we read the use of the permissive “may” in the statute as conferring discretion upon the court to remand the matter in an appropriate case.
 
 (Id.
 
 at p. 1297, fn. 3.) In order to avoid fruitless remands with their attendant delay and cost, such a remand would be appropriate only when there is a reasonable possibility that the new evidence of mitigation would change the decision of the tribunal. Judged by this standard, the trial court did not abuse its discretion in this case by failing to remand the case to the Board for reconsideration. The fact that Duarte was compelled by economics to discontinue therapy temporarily, therapy which he had faithfully attended on a weekly basis since August 1987, does not raise a reasonable possibility that the Board would have changed its decision in light of this information. Indeed, nothing in the record suggests that Duarte wanted to discontinue therapy or would not resume when able. Quite the contrary, his declaration was filed in an action seeking his reinstatement. There, in a supplemental declaration, he expressed the hope of resuming therapy as soon as he was reemployed by the Department. Under these circumstances, no abuse of discretion appears.
 

 
 *537
 
 Disposition
 

 The judgment is affirmed. The stay previously issued, having served its purpose, is vacated.
 

 Blease, Acting P. J., and Carr, J., concurred.
 

 Appellant’s petition for review by the Supreme Court was denied November 14, 1991. George, J., was of the opinion that the petition should be granted.
 

 [1]
 

 In one instance the Board’s authority in discipline is original rather than that of review. If an appointing power has not taken disciplinary action against an employee then a third person, with the consent of the Board or the appointing power, may file charges against an employee requesting that adverse action be taken. In such an instance the Board must hold a hearing and if it finds that the charges are true then “it shall have the power to take such adverse action as in its judgment is just and proper.” (Gov. Code, § 19583.5.)
 

 [2]
 

 In this context, the phrase “adverse action” means “dismissal, demotion, suspension, or other disciplinary action.” (Gov. Code, § 19570.)
 

 [3]
 

 The California Supreme Court has occasionally noted that “[t]he appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason.”
 
 (Shamblin
 
 v.
 
 Brattain
 
 (1988) 44 Cal.3d 474, 478 [243 Cal.Rptr. 902, 749 P.2d 339].) Although an act exceeding the bounds of reason manifestly constitutes an abuse of discretion, abuse is not limited to such an extreme case. In
 
 City of Sacramento
 
 v.
 
 Drew
 
 (1989) 207 Cal.App.3d 1287, 1297 [255 Cal.Rptr. 704], we rejected the contention that the sole test of abuse of discretion was whether the trial court’s action was “whimsical, arbitrary, or capricious.” “This pejorative boilerplate,” we concluded, “is misleading since it implies that in every case in which a trial court is reversed for an abuse of discretion its action was utterly irrational. Although irrationality is beyond the legal pale it does not mark the legal boundaries which fence in discretion.”
 
 (Ibid.)