Filed 12/9/20  In re H.T. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re H.T., a Person Coming Under the Juvenile Court Law. | C091624 |
| SACRAMENTO COUNTY DEPARTMENT OF CHILD, FAMILY AND ADULT SERVICES, | (Super. Ct. No. JD239985) |
| Plaintiff and Respondent, | |
| v. | |
| F.T., | |
| Defendant and Appellant; | |
| H.T., | |
| Appellant. | |

Father appeals from the juvenile court's placement orders entered after a relative placement hearing; the minor H.T. joins in the briefing.  (Welf. & Inst. Code, §§ 361.3, 395.)[1]  Their sole contention on appeal is that the juvenile court abused its discretion in

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

denying placement of the minor with the paternal cousins and continuing placement in her current foster home with her sibling. Disagreeing, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

We include only the facts relevant to the disputed placement order.

The two-day-old minor was taken into protective custody in July 2019, and placed in the confidential foster home where her sibling N.D. lived.

Prior to the August 2, 2019 detention hearing, the parents identified possible relative placements for consideration that included the minor's paternal second cousins, B.T. and W.J. The cousins did not clear emergency placement requirements due to prior child welfare allegations. The minor was ordered detained and remained placed in the foster home with her sibling. The Department's August 2019 jurisdiction/disposition report noted the minor was doing well in her placement and that the minor's current caregivers were in the process of adopting N.D. and were willing to provide permanency for the minor as well. The cousins also expressed an interest in placement of the minor.

In its October 2019 addendum report, the Department again reported that the minor was doing very well in her placement. The minor's caregivers had adopted N.D. and continued to be willing to adopt the minor. The parents requested the Department assess the cousins and supported placement with them. The Department submitted a section 361.3 assessment regarding the cousins. The cousins had been referred to a Resource Family Approval (RFA) orientation on August 9, 2019, and the assessment was pending. The cousins had lived at their address for the past 10 years, been married for 23 years, and were retired and able to care for the minor during the day. Additionally, they had fostered other children and were aware of the medical issues associated with children (such as the minor) exposed to controlled substances in utero. The cousins also indicated they had a good relationship with their family and additional support. The cousins did not have placement of any of the minor's siblings. The Department noted no concerns about the cousins' ability to meet the minor's needs and they were willing to follow court

2

orders and department directives. As to the cousins' moral character, the Department noted that there had been a substantiated emotional abuse referral as to cousin B.T. on September 14, 2010, and a substantiated general neglect referral as to both cousins in 2014, the latter for leaving their adopted nephew in the care of inappropriate relative caregivers who physically abused him. The cousins had an open Child Protective Services (CPS) case in 2014 for the nephew (who was 15 years old at the time), and the juvenile court sustained a petition that stated, in part, that B.T. had a history of physically abusing the nephew. The abuse had resulted in a scar on the nephew's back that measured approximately two and one-half centimeters, and also included slapping him in the face.

The juvenile court had also sustained the allegation that the cousins left the nephew in the care of an inappropriate relative caretaker who had physically abused the nephew. The cousins had completed services and reunified with the nephew, and the dependency case was closed in August 2015. The Department did not make a placement recommendation at that time, as the cousins were pending RFA approval and further review of CPS and/or criminal history. The combined jurisdiction/disposition hearing took place on October 11, 2019. The juvenile court sustained the petition, adjudged the minor a dependent, and ordered removal and reunification services. The court set a relative placement hearing for December 13, 2019.

The Department filed an updated report regarding relative placement with the cousins. The cousins had met RFA standards on November 14, 2019. They had been married for 26 years, had raised two biological children and their adopted nephew, and provided childcare for their two grandchildren during the week. The Department noted concern about the family's prior involvement with the CPS and the cousins' ability to appropriately discipline the minor as she aged. The Department requested additional time to investigate recently discovered additional information about the substantiated allegations of physical abuse and neglect of the nephew; the relative placement hearing

was continued for further information. On January 10, 2020, the Department filed an updated relative assessment concluding placement with the cousins was not in the minor's best interests. The Department noted concerns regarding the CPS history of the nephew and also that the cousins had received RFA approval only due to an exemption. Additionally, the Department considered that the minor was appropriately situated in a concurrent planning home with her biological sibling, who had been adopted by the caregivers, and that the minor was comfortable in her current home and shared an appropriate bond with both her caretakers and her sibling.

In support of their request for placement of the minor, the cousins filed a JV-285 relative information statement. They stated in part that: "Our nephew has had over 15 therapist[s], one he masturbated in front of and she quit, one he beat up she quit. [The nephew] has been diagnosed with multiple mental illness[es]. Things that cps is talking about in 2014 that didn't happen Judge Horton made us go to classes and we did, and [the nephew] was returned to our home. There's no way to prove you're right, and it is painful when someone say[s] you did something and you know its not true, and you get stuck in classes with [] drug addicts, and after we completed classes Judge Horton was impressed and returned our child. We['re] happy to say [the nephew] is turned out to be a fine young man, and is working, has his high school diploma, and [is] working on his behavior."

Father requested placement be set for a contested hearing.

The hearing took place on February 25, 2020. No party presented any witness testimony. After hearing argument, the juvenile court denied the cousins placement of the minor. In making its ruling, the court addressed each of the factors set forth in section 361.3.

## DISCUSSION

Father and the minor contend the juvenile court abused its discretion in denying placement with the paternal cousins and continuing her current placement. We disagree.

4

Following removal of a child from the physical custody of his or her parents, "preferential consideration shall be given to a request by a relative of the child for placement of the child with the relative." (§ 361.3, subd. (a).) Once such a relative placement request is made, the Department and the juvenile court must consider various factors in determining whether it is appropriate for the child to be placed with the relative. The key factors include the best interest of the child, wishes of the parents, the placement of siblings in the same home, whether the relative has a history of child abuse or neglect, the nature and duration of the relationship between the relative and the child, and the relative's willingness and ability to exercise proper care of the child, to provide an adequate and safe home, and to facilitate reunification with the child's parents. (§ 361.3, subd.(a).)[2] "However, the best interests of the child is the linchpin of the analysis." (*In*

---

[2] Section 361.3, subdivision (a) provides in detail that: "These factors include: "(1) The best interest of the child, including special physical, psychological, educational, medical, or emotional needs. [¶] (2) The wishes of the parent, the relative, and child, if appropriate. [¶] (3) The provisions of Part 6 (commencing with Section 7950) of Division 12 of the Family Code regarding relative placement. [¶] (4) Placement of siblings and half siblings in the same home, unless that placement is found to be contrary to the safety and well-being of any of the siblings, as provided in Section 16002. [¶] (5) The good moral character of the relative and any other adult living in the home, including whether any individual residing in the home has a prior history of violent criminal acts or has been responsible for acts of child abuse or neglect. [¶] (6) The nature and duration of the relationship between the child and the relative, and the relative's desire to care for, and to provide legal permanency for, the child if reunification is unsuccessful. [¶] (7) The ability of the relative to do the following: [¶] (A) Provide a safe, secure, and stable environment for the child. [¶] (B) Exercise proper and effective care and control of the child. [¶] (C) Provide a home and the necessities of life for the child. [¶] (D) Protect the child from his or her parents. [¶] (E) Facilitate court-ordered reunification efforts with the parents. [¶] (F) Facilitate visitation with the child's other relatives. [¶] (G) Facilitate implementation of all elements of the case plan. [¶] (H)(i) Provide legal permanence for the child if reunification fails. [¶] . . . [¶] (I) Arrange for appropriate and safe child care, as necessary. [¶] (8) The safety of the relative's home."

*re Robert L.* (1993) 21 Cal.App.4th 1057, 1068, superseded by statute on another ground, as noted in *Cesar V. v. Superior Court* (2001) 91 Cal.App.4th 1023, 1032.)

We review of the juvenile court's determination regarding section 361.3 relative placement for abuse of discretion. (*In re Robert L., supra,* 21 Cal.App.4th at p. 1067.) "[W]hen a court has made a custody determination in a dependency proceeding, ' " a reviewing court will not disturb that decision unless the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination [citations]." ' (*In re Geoffrey G.* (1979) 98 Cal.App.3d 412, 421; see *In re Mark V.* (1986) 177 Cal.App.3d 754, 759 [accord]; see also *Department of Parks & Recreation v. State Personnel Bd.* (1991) 233 Cal.App.3d 813, 831.) And we have recently warned: 'The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." ' " (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319, as modified on denial of rehearing on May 12, 1994.) We find no abuse of discretion here.

Under section 361.3, "the court is not to presume that a child should be placed with a relative, but is to determine whether such a placement is *appropriate*, taking into account the suitability of the relative's home and the best interest of the child. [Citation.]" (*In re Stephanie M.*, *supra*, 7 Cal.4th at p. 321.) "[T]he fundamental duty of the court is to assure the best interest of the child, whose bond with a foster parent may require that placement with a relative be rejected." (*Ibid*.)

Here, although the parents wished to have the minor placed with the cousins and the cousins were financially capable of providing for her, the cousins had a concerning CPS history. The cousins did obtain RFA approval with an exemption; thus their CPS history did not bar them from being evaluated and considered for placement, but that history was nonetheless a legitimate factor for the juvenile court to consider. In considering this factor, the court noted with concern that despite the services the cousins

6

had received in connection with the dependency case, they continued to blame the nephew's removal on the nephew himself. The cousins' statement to the court showed no insight. As noted by the court, while the nephew demonstrated "some pretty extreme behaviors," the response of physical abuse was "obviously" not appropriate. Yet there was nothing in cousins' statement to suggest that they understood the abuse was unacceptable. Indeed, their statement denied any abuse occurred.

The minor in this case is extremely young and vulnerable; she also has a hearing disability and is too young to fully access for other possible special needs or behavioral issues. The current caregivers have no CPS history, and there was no indication they had hindered reunification efforts in any way. The minor was six months old at the time of the hearing and she had been living with her caretakers and sibling her entire life. She was bonded to her caretakers, as well as her sibling, whom the caretakers had adopted.

The juvenile court expressly weighed the factors in section 361.3 and considering them all together, ultimately determined that leaving the minor in her current placement was in her best interests. In making its decision, the court gave much weight to the cousins' CPS history, the minor's bond with those in her current placement, and the fact that her current placement was also the permanent placement for her biological sibling. The court's concentration on these factors was not unreasonable.

"The relative placement preference . . . is not a relative placement guarantee." (*In re Joseph T.* (2008) 163 Cal.App.4th 787, 798.) It is not an evidentiary presumption in favor of placement with a relative. (*In re Stephanie M.*, *supra*, 7 Cal.4th at p. 320.) " 'Preferential consideration' " means that the relative seeking placement shall be the first placement to be considered and investigated. (§ 361.3, subd. (c)(1); *In re Stephanie M.*, at p. 320.) The Department investigated and the juvenile court properly considered placement of the minor with the cousins, but after considering the factors set forth by statute ultimately found that relative placement was not in the minor's best interest. We see no error.

7

## DISPOSITION

The orders of the juvenile court are affirmed.

_____/s/_____
Duarte, Acting P. J.

We concur:

_____/s/_____
Hoch, J.

_____/s/_____
Renner, J.

8