Filed 11/22/24
Opinion following rehearing

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| FRIENDS OF THE SOUTH FORK GUALALA,<br><br>    Plaintiff and Appellant,<br><br>           v.<br><br>DEPARTMENT OF FORESTRY AND FIRE PROTECTION,<br><br>    Defendant and Respondent;<br><br>RICHARDSON RANCH, LLC,<br><br>    Real Party in Interest and Respondent. | A168163<br><br>(Sonoma County<br>Super. Ct. No. SCV-268396) |

## I. INTRODUCTION

In this California Environmental Quality Act (CEQA) (Pub. Resources Code § 21000 et seq.) proceeding against respondent California Department of Forestry and Fire Protection (CalFIRE), we consider whether the trial court erred in denying an application for disability accommodation under rule 1.100 of the California Rules of Court.[1] The rule 1.100 application at issue, made by petitioner Friends of the South Fork Gualala (FSFG) on behalf of its counsel of record, Daniel Garrett-Steinman, sought extensions

---

[1] All undesignated citations to rules refer to the California rules of Court.

1

of time to meet briefing deadlines and other relief from routine procedural obligations. We see no error and will affirm.

We set forth the full procedural setting in greater detail below, but to frame our holding at the outset, a quick thumbnail sketch of the relevant background is as follows.

In July 2023, the court granted in part and denied in part a petition for a writ of mandate bringing various CEQA challenges to CalFIRE's approval of a rancher's plan to harvest timber (the Timber Plan). Although the court granted the petition on the merits, vacating the approval as deficient in several respects—inadequate consideration of geologic, biologic, and cultural resources—it rejected FSFG's complaint that the tardy publication of a complete written response to public comments (the Official Response) rendered CalFIRE's approval of the Timber Plan defective. In FSFG's view, the incomplete and late Official Response should have been an additional ground for vacatur.

Unsatisfied with the scope of its victory, FSFG now appeals on the ground that the trial court denied it a full and fair opportunity to litigate the alleged invalidity of the Official Response, an issue it claims CalFIRE attempted to explain away after the fact based on false extra-record evidence. According to FSFG, the trial court erroneously denied a May 2023 rule 1.100 request it made on behalf of Garrett-Steinman, supported by undisputed evidence that he suffers from bipolar disorder. In that request, FSFG sought the following relief: 1) more time to prepare a supplemental brief addressing defects in the Official Response; 2) leave to file a supplemental brief in support of its request for issue sanctions; 3) an order relieving Garrett-Steinman from the obligation to engage in further meet-and-confer activity; and 4) a continuance of the merits hearing on its

2

mandate petition.  Because the request involved an uncontested, qualifying disability (rule 1.100(a)(1)) from a person entitled to invoke the protections of rule 1.100 (rule 1.100(a)(2)), FSFG claims the court had no choice but to grant it.

We decline to endorse such a wooden application of rule 1.100.  At issue here is the last in a series of seven requests for scheduling relief over the course of eight months either by FSFG directly or by its counsel Garrett-Steinman.  One of these requests came from Garrett-Steinman himself; the others came from FSFG on his behalf, with a supporting declaration from Garrett-Steinman.  Six of the prior requests were actually or in effect granted.  The court's grant of relief on the previous six occasions simply led to more accommodation requests and stalled progress toward final resolution of the case.  For two independent reasons, we have no trouble concluding that, in the circumstances presented, the court was within its discretion to deny a seventh request for postponement.

First, CEQA actions have statutory calendaring priority and must be "quickly heard and determined."  (Pub. Resources Code, § 21167.1.)  Having filed a proceeding subject to calendaring priority, FSFG was obliged to move the case forward with dispatch.  On this record, the court could properly conclude that granting another accommodation request would "fundamentally alter" the nature of the judicial services being provided. (Rule 1.100(f)(3).)  Second, in making an assessment of whether granting another accommodation would amount to an "undue" financial or administrative burden on the court, the court could properly take into account that the disabled person here was counsel of record—not a litigant—and that, as a result, denial of the request for rule 1.100 relief would not deny FSFG access to judicial services.  (Rule 1.100(f)(2).)

3

And even assuming error in the trial court's articulated basis for denying the requested accommodation, the error was harmless.

## II. BACKGROUND

In December 2020, real party in interest below and respondent in this appeal Richardson Ranch LLC (Richardson Ranch)[2] submitted the Timber Plan to CalFIRE. The Timber Plan called for the harvesting of 267 acres of redwood forest along the South Fork of the Gualala River. This land is located in the Gualala River Watershed, which comprises 7,904 acres. Richardson Ranch owns 62 percent of the watershed acreage and is the only entity that has conducted timber harvesting in it during the last decade.

CalFIRE made the Timber Plan available for public comment and received 23 letters from the public. On April 13, 2021, CalFIRE approved the Timber Plan and published an Official Response. According to CalFIRE, it intended at that time to publish a complete, 87-page response but instead published an incomplete, 25-page version because of a clerical error; it then realized its mistake, and on May 20, 2021, published a corrected Official Response (the Corrected Official Response).

On May 13, 2021, prior to the publication of the Corrected Official Response, FSFG filed in Sonoma County Superior Court a petition for a writ of mandate and a complaint for declaratory and injunctive relief and attorney fees against CalFIRE and Richardson Ranch. FSFG challenged CalFIRE's approval of the Timber Plan under CEQA and alleged the Official Response was inadequate.

Over the next two years, the parties litigated their dispute. The litigation included significant disagreements regarding the administrative

---

[2] We will refer to CalFIRE and Richardson Ranch collectively as "respondents" in this appeal.

4

record, discovery, and CalFIRE's process of preparing the Official Response and the Corrected Official Response. Many of these disputes arose out of discovery propounded by FSFG regarding CalFIRE's initial failure to publish a complete response to the public comments.

Based on things such as CalFIRE's failure to produce an original signature page for the Official Response, FSFG took the view that CalFIRE published an incomplete response to the public comments on April 13, 2021, and then covered up having done so. According to FSFG, CalFIRE lied about whether a signed 87-page Corrected Official Response existed when it filed the earlier, incomplete version—CalFIRE claimed it inadvertently omitted 63 pages—and, based on that allegation, accused CalFIRE of spoliation of evidence. This led to further disputes between the parties regarding FSFG's efforts to obtain discovery from CalFIRE on the allegations of procedural irregularity and, ultimately, to an effort by FSFG to obtain evidentiary and issue sanctions for discovery abuse and spoliation of evidence.

Between August 2022 and June 2023, while FSFG sought to litigate these issues, it repeatedly requested continuances of hearings and extensions of various briefing deadlines, each time citing the mental health disability of its counsel, Garrett-Steinman. According to FSFG, respondents' counsel engaged in a pattern of "mistreating" Garrett-Steinman because of his mental health disability, causing him to suffer manic episodes and making it difficult for him to meet briefing deadlines and attend hearings. Respondents and their counsel deny any such "mistreatment" of Garrett-Steinman.

**A.** *The Court Grants Six Requests for Rescheduling Between August 2022 and April 2023, Then Denies the Seventh*

Without getting into the competing narratives about how the opposing lawyers in this case treated one another, suffice it to say that the court gave measured and thoughtful consideration to the impact these interpersonal frictions had on calendar management, and until May 2023, appears to have adopted the view that neither side was any more responsible for causing delay than the other.

But that slowly changed. From August 2022 to April 2023, FSFG and Garrett-Steinman asked the trial court for six sets of continuances, extensions of time, and other calendar adjustments on different discovery and trial matters. Most of these requests were made in the form of disability accommodation requests under rule 1.100. The trial court granted them all in whole or in part except for the April 2023 request, which it initially denied but later in effect granted in a separate order on its own motion. All six requests were based on Garrett-Steinman's mental health disability. Specifically, taking them one by one, the court dealt with the following requests.

First, in August 2022, FSFG asked the court to grant it permission to file a motion to reopen discovery regarding CalFIRE's Official Response, coupling the motion with a confidential disability accommodation sought on Garrett-Steinman's behalf. Following an in camera hearing, the court granted this request and scheduled the hearing on the motion for October 14, 2022. It also ordered the parties to obtain leave of court before filing any further motions in the action.

Second, in October 2022, the trial court granted FSFG's motion to reopen discovery so it could depose certain CalFIRE staff regarding the Official Response. The court noted Garrett-Steinman was "suffering from

6

medical issues for which he is seeking treatment," which "have resulted in the delays at issue." It concluded that in light of these health issues, FSFG had acted with reasonable diligence and, further, that there was "evidence indicating that the conduct of [respondents] has contributed to the problems and exacerbat[ed] delay."

Third, in December 2022, Garrett-Steinman made a request for a scheduling adjustment, again in the form of a disability accommodation under rule 1.100, but this time acting in his own right. The court granted a continuance of the merits hearing from December 16, 2022 to February 17, 2023,[3] and modified the briefing schedule on the merits. The court denied the request to extend the discovery schedule, but later granted an extension after this court issued an alternative writ on the subject in response to a writ petition filed by FSFG.

Fourth, in February 2023, the trial court granted a disability accommodation request from FSFG on Garrett-Steinman's behalf, this one seeking to continue the merits hearing to March 24, 2023, modify the related briefing schedule, and set a briefing schedule for a sanctions motion by FSFG regarding CalFIRE's purported discovery abuses related to its Official Response. The parties later stipulated to, and the court ordered, a modified briefing schedule and a continuance of the merits hearing to April 11, 2023.

Fifth, in March 2023, FSFG submitted another disability accommodation request on behalf of Garrett-Steinman, this time for a four-week suspension of proceedings, to April 10, 2023, and for a further

---

[3] Previously, the court had scheduled the merits hearing on FSFG's writ petition for August 12, 2022, then had rescheduled it for December 16, 2022.

7

continuance of the merits hearing.  Garrett-Steinman stated his health had "further deteriorated," that he was "unable to complete pending briefs," and that "petitioner missed the prior deadlines because its counsel was on the verge of" a mental health crisis.

Further, Garrett-Steinman wrote, "[p]etitioner is concerned for its counsel's long-term mental health and believes a significant disruption in the proceedings may occur absent an accommodation."  He represented that "[p]etitioner will make good-faith efforts to associate additional counsel during the suspension of proceedings" and "believes its efforts will be successful due to the consequential nature of the matters at issue."  The trial court granted this request, resetting the merits hearing to June 9, 2023.

Sixth, on April 7, 2023, FSFG once again applied for a disability accommodation on Garrett-Steinman's behalf, this time requesting another continuance of the merits and a modified briefing schedule regarding both FSFG's motion for evidentiary and issues sanctions against CalFIRE and the merits of its claim regarding CalFIRE's Official Response.  FSFG stated this was "necessary because proceedings in this matter are currently suspended pursuant to petitioner's accommodation request of March 13, 2023."  It added that the parties had discussed but could not agree on a new schedule.

Initially, the trial court was unmoved.  It denied the April 2023 accommodation request on the grounds that to grant it "[c]reates an undue financial or administrative burden for the court" and "[c]hanges the basic nature of the court's service, program, or activity."  It indicated the grounds for denial by checking boxes corresponding to the above-noted reasons on the request form.  The court also concluded that "[c]ontinuances and revised

8

briefing schedules are not accommodations contemplated under the [Americans with Disabilities] Act." It explained, "Unlimited continuances, ad infinitum, seem outside the scope of the ADA."[4] The court noted Garrett-Steinman's previous representation that he was seeking to associate counsel, an effort he said he believed would avoid the need for another continuance.

Explaining further, the court stated, "Significant time has passed" since "[a] representation to the court was made by the applicant that he was going to associate counsel and assured the court he would make that effort to avoid another continuance," and "that has not been fulfilled. . . . [T]he matter has been pending for a long time and at some point it is imperative that justice be served for all parties and the matter heard to conclusion. More continuances will be costly to the court as this matter has been special set on several occasions su[p]planting jury trial time and requiring additional staffing for each date. The matter has been set for merits hearing at least four times, and remote appearance was approved as a specific accommodation to the applicant."

Despite these expressed reservations, the court in effect granted a sixth disability accommodation based on Garrett-Steinman's mental health disability. On its own motion, the court issued an "order for continuance of hearing on merits." For good cause, the court continued the merits hearing to June 9, 2023, and further modified the briefing schedule as requested by

---

[4] The scope of rule 1.100 is defined by reference to the federal Americans with Disabilities Act (ADA). (See rule 1.100(a)(1) [" 'Persons with disabilities' means individuals covered by California Civil Code section 51 et seq.; the Americans with Disabilities Act of 1990 (42 U.S.C. § 12101 et seq.); or other applicable state and federal laws."].)

9

Garrett-Steinman in his accommodation request, extending into late May 2023 the time for the filing of FSFG's briefs on its pending sanctions motion.

But in May 2023, FSFG submitted another disability accommodation request on Garrett-Steinman's behalf. This time, it sought more modifications to the briefing schedule for its pending sanction motion and added a request for an extension of the schedule for briefs on the merits of the parties' Official Response dispute, proposing to extend the deadlines for completion of this briefing into late June 2023. It also asked the court to set a hearing on these matters in July 2023, after the June 9, 2023 merits hearing, and requested that its counsel be relieved of further meet-and-confer obligations concerning its proposed sanctions briefing "in the interest of preventing any further disruptions to the schedule."[5] CalFIRE filed an objection to the accommodation request.

In support of FSFG's May 2023 disability accommodation request, Garrett-Steinman offered more explanation of his circumstances. Reiterating, once again, the litany of challenges he had been dealing with for nearly a year, he said he suffered from "numerous mental health disabilities," which disabilities had "precluded timely completion of petitioner's sanctions motions and public comment brief." He suffered from manic episodes that could "last many weeks and [had] consistently caused a nearly complete halt in [his] workflow." He said he had started to take new medication; he said he had diligently attempted to complete the briefs at issue, such as by working six days a week for several weeks on the sanctions

---

[5] The reason FSFG gave for asking that its counsel be relieved from meeting-and-conferring about the sanctions-related briefing schedule was that opposing counsel's alleged indifference toward Garrett-Steinman's disability threatened to trigger further manic episodes, disrupt his workflow, and potentially create the need for further continuance requests.

10

motion (although he could only complete a modest amount of work a day); and he requested to be relieved from the obligation to engage in meet-and-confer communications with opposing counsel related to the briefing for which he sought time extensions.

The trial court denied this latest accommodation request, again on the grounds, checked by the court on the response to the request form, that to grant it would "[c]reate[] an undue financial or administrative burden for the court" and "[c]hange[] the basic nature of the court's service, program, or activity." The court stated, "This is a request for continuance rather than an accommodation. As explained in the previous request, granting this request will create undue financial and administrative burdens to the court in adding an additional hearing, additional administrative processing of documents, and duplication of court processing which has already burdened the court numerous previous times due to prior similar requests. Petitioner has not actually used the previously granted accommodations, but instead has continued to ask for additional time."

FSFG then turned to us, filing a petition for writ of mandate seeking review of the trial court's denial of its May 2023 disability request, accompanied by a stay request. We summarily denied the petition and stay request on June 7, 2023.

## B. *The Trial Court's Rejection of FSFG's Sanctions Motion and Ruling on the Merits*

FSFG filed a partially briefed sanctions motion on April 19, 2023.[6] This motion, which sought sanctions for discovery abuse under Code of Civil

---

[6] FSFG contends that, as a result of the trial court's denial of its May 2023 accommodation request, it briefed only the "evidentiary sanctions" part of its motion (Code Civ. Proc. § 2023.030, subd. (c)) and was unable to brief the "issues sanctions" portion of the motion (*id.*, subd. (b)). This may be the

11

Procedure section 2023.030, was based on CalFIRE's purported spoliation of evidence relating to the Official Response. FSFG sought an order that the trial court "treat as an established fact . . . that there has never existed an 87-page public comment response document for [the Timber Plan] with an original signature . . . ." Denying the motion, the court found "nothing demonstrates that [CalFIRE] in any way has engaged in discovery abuse" and that there was "no basis for imposing the requested sanctions." The court also concluded that "neither the evidence at issue nor the requested sanctions would have any bearing on the decision on the merits."

The trial court held the merits hearing on FSFG's petition on June 9, 2023. At the hearing, FSFG continued to press for an opportunity to submit further briefing on its motion for issue sanctions, indicating at one point it would be willing to waive any right to further hearing if such briefing were allowed. The court declined to allow further briefing. In a written order

---

case, but in its brief supporting the sanction motion filed on April 19, 2023, it nonetheless requested "issue sanctions" and simply failed to present supporting argument on the point. FSFG now claims it actually wished to file a separate motion seeking sanctions against CalFIRE under Code of Civil Procedure section 128.5 for alleged litigation misconduct more broadly, including discovery abuse. We do not view the distinction between these different statutory bases for sanctions to be material in the present appeal. The court had previously ordered that no further motions of any kind could be filed without leave of court. It had also set an April 19, 2023 briefing deadline for the sanctions motion FSFG indicated it wished to file at that time. Whether FSFG later sought permission to file further briefing on its pending sanctions motion (providing supplemental briefing directed to issue sanctions for discovery abuse) or whether it sought permission to file a wholly new sanctions motion (seeking some broader form of sanctions for litigation misconduct more generally), the issue here is the same: Was FSFG entitled to be granted leave to submit either filing as disability accommodation on behalf of its counsel?

12

filed on June 14, 2023, the court granted the petition in part and denied it in part.

Specifically, the court granted the petition "with respect to the [Timber Plan's] analysis of impacts on sedimentation, impacts on biological resources, impacts on cultural resources, cumulative impacts, and analysis of alternatives." It denied the petition "with respect to the claim that the late publication of the full 87 pages of the official responses renders the responses defective or improper to consider, or otherwise violates CEQA." And it found that FSFG "has cited nothing showing that the failure to publish the full 87-page set of responses . . . itself results in a prejudicial violation of CEQA. Although [CalFIRE] did not publish the full set of responses until May 2021, more than a month after the [Timber Plan's] approval, the evidence and record demonstrate that [CalFIRE] in fact had prepared this complete set of responses prior to the approval, but it simply failed to publish the full set at the time of approval due to a clerical error."

FSFG filed a notice of appeal on June 28, 2023 from a "[j]udgment after court trial."[7]

### III. DISCUSSION

#### A. *The Appeal is Not Moot*

At the threshold, respondents argue mootness. Because the parties have indicated their intention to litigate the issue of prevailing party

---

[7] We "may treat a notice of appeal filed after the superior court has announced its intended ruling, but before it has rendered judgment, as filed immediately after entry of judgment." (Rule 8.104(d)(2).) On July 13, 2023, after FSFG filed its notice of appeal, the trial court issued a judgment granting in part and denying in part FSFG's petition for the reasons we have summarized.

attorney fees, and because our resolution of this appeal could affect that ruling, we reject the argument.

In July 2023, the trial court, in accordance with its order on the merits and judgment, issued a peremptory writ of mandate directing CalFIRE to set aside its approval of the Timber Plan and the notice of conformance based thereon and file an initial return in the court within 60 days specifying the steps taken to comply with the writ. That same month, the parties, relying on rule 3.1702(b)(2)(B), agreed to extend the time for the filing of a motion for attorney fees in the case while this appeal was pending.

In September 2023, CalFIRE set aside its approval of the Timber Plan and filed a return in the trial court. Shortly thereafter, the trial court filed an order discharging the writ. Subsequently, pursuant to the parties' stipulation, the trial court ordered that its discharge did not deprive it of the jurisdiction necessary to take such further action as may be directed by this court.

Based on these events, respondents argue that this appeal is moot because FSFG cannot obtain any further relief as a result of this appeal. FSFG argues this matter is not moot for multiple reasons, including that our appeal could impact the court's ruling on attorney fees. We agree with the latter point and therefore do not address the other arguments FSFG makes.

Code of Civil Procedure section 1021.5 provides, "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general

14

public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any."

As FSFG points out, appellate courts have concluded that an otherwise moot CEQA claim is not moot when the resolution of the merits of an appeal affects a party's entitlement to attorney fees.[8]  We reach the same conclusion here.  FSFG argues that, in theory, we might decide that the trial court erred in denying Garrett-Steinman's May 2023 accommodation request; that such an error could have impacted the trial court's resolution of FSFG's Official Response claim; and that, as a result, our decision could ultimately impact the trial court's resolution of any motion for attorney fees. Suffice it to say we agree.  The chain of reasoning is somewhat attenuated, but it has enough plausibility to convince us there is a live issue here. Accordingly, though the question is close, we conclude the appeal is not moot.

---

[8] See *Save Our Residential Environment v. City of West Hollywood* (1992) 9 Cal.App.4th 1745, 1751 ("[b]ecause the award of attorney fees depends on the propriety of the trial court's ruling on the merits of the action, the appeal is not moot"); *Carson Citizens for Reform v. Kawagoe* (2009) 178 Cal.App.4th 357, 365 (appeal not moot "because the propriety of the trial court's ruling on the merits of the action determines whether Citizens was eligible for an award of attorney fees"); *Indio Police Command Unit Assn. v. City of Indio* (2014) 230 Cal.App.4th 521, 534 (quoting *Carson Citizens for Reform v. Kawagoe* to conclude matter not moot because "the issue of whether [the moving party] properly prevailed is relevant to the attorney fees order").  Although unlike this case, those cases involved appeals from, among other things, attorney fee rulings, that is a distinction without difference in light of the parties' plain intention to litigate the issue, as seen by their stipulation extending the time for attorney fee motions to be filed.

15

**B.** *The Rule 1.100 Application*

    **1. Applicable Rule 1.100 Principles**

"It is the policy of the courts of this state to ensure that persons with disabilities have equal and full access to the judicial system." (Rule 1.100(b).) To accomplish this goal, rule 1.100 allows " '[p]ersons with disabilities,' " including lawyers, to apply for " '[a]ccommodations,' " meaning "actions that result in court services, programs, or activities being readily accessible to and usable by persons with disabilities." (Rule 1.100(a)(1)–(3).) Such accommodations "may include making reasonable modifications in policies, practices and procedures . . . ." (Rule 1.100(a)(3).)[9]

"Rule 1.100(a) and (b) allows persons with disabilities covered by the Unruh Civil Rights Act, Civil Code section 51 et seq., the ADA, or other applicable state and federal laws to apply for accommodations to ensure full and equal access to the judicial system. . . . Under the appropriate circumstances, an accommodation may be a trial continuance." (*Vesco v. Superior Court* (2013) 221 Cal.App.4th 275, 279, citing *In re Marriage of James & Christine C.* (2008) 158 Cal.App.4th 1261, 1273, fn. 4 (*Marriage of James*).)

---

[9] Rule 1.100(a)(3) states in full: " 'Accommodations' means actions that result in court services, programs, or activities being readily accessible to and usable by persons with disabilities. Accommodations may include making reasonable modifications in policies, practices, and procedures; furnishing, at no charge, to persons with disabilities, auxiliary aids and services, equipment, devices, materials in alternative formats, readers, or certified interpreters for persons who are deaf or hard-of-hearing; relocating services or programs to accessible facilities; or providing services at alternative sites. Although not required where other actions are effective in providing access to court services, programs, or activities, alteration of existing facilities by the responsible entity may be an accommodation."

"A court may deny a properly stated request for accommodation for only one of three reasons," including "if the accommodation 'would create an undue financial or administrative burden on the court' (rule 1.100(f)(2))" or the " 'accommodation would fundamentally alter the nature of the service, program, or activity.' (Rule 1.100(f)(3).)" (*Biscaro v. Stern* (2010) 181 Cal.App.4th 702, 708–709 (*Biscaro*).) The trial court must state the reason for any denial. (Rule 1.100(e)(2)(B).) Its ruling should be based on the particular circumstances of the case before it. (*Marriage of James*, *supra*, 158 Cal.App.4th at pp. 1276–1277.)

None of the parties has brought to our attention any precedent addressing whether an applicant under rule 1.100 may seek an accommodation "on behalf of" someone else, as FSFG did here. Nor does the text of rule 1.100 speak directly to this question. We will assume the answer to it is yes, without deciding the issue.

### 2. Standard of Review

The applicable standard of appellate review is abuse of discretion. (*Gropen v. Superior Court* (2023) 89 Cal.App.5th 1068, 1075, 1082.) "Under an abuse of discretion standard of review, the 'trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious.' [Citation.] A 'court abuses its discretion " 'where no reasonable basis for the action is shown.' " ' " (*In re Tobacco Cases II* (2015) 240 Cal.App.4th 779, 790.)

On one level, "[a]ny exercise of discretion must rest on correct legal premises, . . . and in that respect our review is de novo." (*Minick v. City of Petaluma* (2016) 3 Cal.App.5th 15, 25.) " 'Action that transgresses the confines of the applicable principles of law is outside the scope of discretion and we call such action an "abuse" of discretion.' " (*Department of Parks &*

17

*Recreation v. State Personnel Bd.* (1991) 233 Cal.App.3d 813, 831 (*Department of Parks & Recreation*).) Under this principle, we defer to choices made by the trial court within a legally permitted range of discretion, but always stand ready to review de novo whether the trial court properly applied the law in the first place.

On another level, any exercise of legal discretion will rest upon some factual underpinning, which itself is entitled to deferential substantial evidence review. (*Department of Parks & Recreation*, *supra*, 233 Cal.App.3d at p. 831 [while the substantial evidence standard "deals with evidentiary proof," the broader abuse of discretion standard "is concerned with legal principles"].) This embedded level of deference to predicate fact-finding reflects the institutional reality that trial courts are generally better positioned to resolve contests of historical fact than we are in the appellate courts. It applies here to the assessment of procedural events unfolding before the trial court and their impact on the court's case management obligations, just as surely as it does to substantive facts.

The ruling FSFG challenges in this case easily passes muster under this two-level standard for discretionary decision-making. Contrary to FSFG's suggestion, we are not dealing with a legal issue that compels us to say the trial court's discretion could be exercised in only one way. Nor is this a "mixed question" case (e.g., *Haworth v. Superior Court* (2010) 50 Cal.4th 372, 385–386) where the factual aspects of a trial court ruling under review are undisputed or admitted, and the legal aspects of the ruling predominate, thus allowing us to substitute our judgment because the underlying legal premise of the trial court's ruling demands unfettered appellate judgment. (See *People v. Uribe* (2011) 199 Cal.App.4th 836, 857.)

18

### 3. The Trial Court Did Not Abuse Its Discretion

Under rule 1.100(a), a trial court's discretion is structured and limited. Not only are the available grounds for denying an accommodation request limited to those specified in rule 1.100(f), as noted above, but certain formal requisites of the rule 1.100 decisionmaking process must always be followed.

For example, every superior court and appellate court must designate at least one person to be the ADA coordinator to address requests for accommodations (rule 1.100(b)) and, once applications are submitted, responses must be made in a specified manner. Responses must always be provided promptly (rule 1.100(e)(2)); if granted, must indicate the nature and duration of any accommodation or alternative accommodation to be made available (rule 1.100(e)(2)(A), (C), (D)); and if denied, must be in writing (rule 1.100(e)(2)), provide a reason for the denial (rule 1.100(e)(2)(B)), and indicate the date the response was served (rule 1.100(e)(2)(E)).

Failure to rule promptly, in the specified manner, on a properly presented rule 1.100 disability accommodation request *may*, by itself, warrant reversal. (See *Biscaro, supra,* 181 Cal.App.4th at p. 705 [reversing and remanding for further consideration where the court failed to rule on a rule 1.100 request].) But the fact that a trial court's discretion under rule 1.100 is structured and limited does not mean it is left with no discretion at all once a participant in litigation presents a qualifying disability. A requested accommodation may be denied outright if it will either "create an undue financial or administrative burden on the court" (rule 1.100(f)(2)) or "fundamentally alter the nature of the service, program, or activity" (rule 1.100(f)(3)).

Here, the court displayed considerable patience with a lawyer who was clearly capable of handling the complexities of a CEQA case—as evidenced by the overall result on the merits—but whose medical condition apparently prevented him from working at the pace the court was entitled to expect in a proceeding subject to statutory calendaring priority.[10]  What eventually happened, as we read the record, is that the court's patience ran out.  After multiple requests for scheduling postponements, and after FSFG's failure to retain additional counsel, the trial court appears to have concluded FSFG was attempting to use Garrett-Steinman's medical condition as an excuse for scheduling postponements of indefinite duration.

Faced with these circumstances, it was reasonable to deny a request for further extensions of the schedule into mid-summer 2023, a point in time more than two years after FSFG filed its writ petition.  Not only did FSFG's pattern of repeated requests for adjustment of the schedule unduly burden the court by interfering with its ability to manage other cases on its docket efficiently, but it is fair to say, as the court did here, that permitting FSFG to continue to interpose its own open-ended scheduling preferences "fundamentally alter[ed] the nature" of this expedited CEQA proceeding.

---

[10] In a CEQA proceeding, "all courts in which the action or proceeding is pending shall give the action or proceeding preference over all other civil actions, in the matter of setting the action or proceeding for hearing or trial, and in hearing or trying the action or proceeding, so that the action or proceeding shall be quickly heard and determined."  (Pub. Resources Code, § 21167.1; *Stockton Citizens for Sensible Planning v. City of Stockton* (2010) 48 Cal.4th 481, 500, 494 [noting in a review of a CEQA writ proceeding that "expedited briefing and hearing schedules are required," citing Pub. Resources Code, §§ 21167.1, 21167.4]); see *Tiburon Open Space Committee v. County of Marin* (2022) 78 Cal.App.5th 700, 782 ["CEQA was meant to serve noble purposes, but it can be manipulated to be a formidable tool of obstruction"].)

We reject FSFG's argument that the trial court was required to grant a further accommodation in circumstances where, as the record makes clear, the court clearly believed that granting another accommodation was an exercise in futility. Counsel for FSFG himself stated that he continued to suffer manic episodes that could last for "many weeks" and which had "consistently caused a nearly complete halt in [his] workflow." In short, from the trial court's perspective, there was no end in sight to FSFG's requests for more time.

Two months earlier, in support of a previous accommodation request, Garrett-Steinman had represented to the court that FSFG would seek associate counsel in order to avoid the need for further continuances, expressing confidence that those efforts would "be successful due to the consequential nature of the matters at issue." Yet he made no mention of any such efforts in his two subsequent requests and FSFG did not retain associate counsel. Thus, despite numerous continuances and extensions of time, Garrett-Steinman remained unable to effectively participate in the proceedings. The court had little reason to believe further time accommodations would enable him to fulfill his briefing obligations on the expedited schedule demanded of the case, or to obtain assistance from new counsel brought into the case by FSFG to help him.[11]

---

[11] In a petition for rehearing from FSFG, we are told that Garrett-Steinman's earlier optimism about his ability to obtain the assistance of another lawyer was a product of his mental disorder and should not be held against him. FSFG claims he "made that prediction during a manic episode–which causes an inflated sense of self-importance." It then cites *Den Hartog v. Wasatch Academy* (10th Cir. 1997) 129 F.3d 1076, 1081, fn. 2 ("Characteristics of mania" include "delusions of grandeur"). We do not question that bipolar disorder is a qualifying disability under rule 1.100(a)(1) or that lawyers are among those who may be entitled to

21

FSFG's contention that the trial court had no choice but to grant its May 2023 request for accommodation under rule 1.100 is based primarily on *Marriage of James*. That case warrants in-depth consideration because its procedural setting is somewhat complex and its holding is multilayered. The appellant there, a divorcing spouse, Christine C., represented herself in the dissolution proceedings that gave rise to the appeal because she was unable to pay for a lawyer. (*Marriage of James*, *supra*, 158 Cal.App.4th at pp. 1264, 1268.) She suffered from bipolar disorder and breast cancer. (*Id.* at p. 1268.) There was no dispute there, as there is none in this case, that the disabilities involved fell within the scope of rule 1.100.

Before trial on spouse James C.'s dissolution petition in August 2005, the trial judge (Judge Silbar) denied Christine's rule 1.100 accommodation request for a 90-day trial continuance. (*Marriage of James*, *supra*, 158 Cal.App.4th at p. 1266.) But later the assistant presiding judge (Judge Wieben Stock)—who was the court's designated ADA coordinator—granted a continuance to November 2005. (*Id.* at pp. 1266–1267). A few months later, after denying James's request that a guardian ad litem be appointed for Christine, Judge Silbar rescheduled the trial for March 2006 based on a doctor's opinion that Christine remained unfit to participate in the trial. (*Id.* at pp. 1267–1269.)

After promising she would not return to Judge Silbar asking for another trial continuance (*Marriage of James*, *supra*, 158 Cal.App.4th at pp. 1268–1269), in February 2006 Christine made a second accommodation

---

accommodation under rule 1.100(a)(2). But the idea that representations to the court by a lawyer suffering from this type of disability may be discounted or disregarded on the ground they are nothing more than evidence of the disability strikes us as something out of Alice in Wonderland.

request seeking a trial continuance, this one due to mental stress, directed to Judge Wieben Stock, and personally served on both judges (*id*. at p. 1269). She checked herself into a hospital the day before the trial was to resume. (*Ibid.*) Judge Silbar commenced trial in Christine's absence without waiting for a ruling from Judge Wieben Stock on the pending accommodation request. (*Id*. at p. 1270.) Judge Wieben Stock eventually denied the request, noting that, to grant a further trial continuance "without sufficient medical evidence" would "inappropriately countermand the discretion and duties of [Judge Silbar] . . . , who is otherwise fully qualified to consider [Christine's] reasonable requests, in an appropriate manner." (*Id*. at p. 1270.)

Trial was then completed in Christine's absence, and rulings were made on the division of the marital assets, spousal support, and attorney fees. (*Marriage of James*, *supra*, 158 Cal.App.4th at pp. 1264, 1271.) Christine moved for a new trial, supporting her motion with additional medical declarations explaining her inability to appear at trial and arguing she should have been granted a continuance. (*Id*. at pp. 1271–1272.) In denying the motion, Judge Silbar criticized Christine for making a second accommodation request to Judge Wieben Stock without indicating she was doing so, even though the record showed the request had been personally served on both judges. (*Id*. at p. 1269.) Judge Silbar did not mince words, commenting, "This is absurd, absolutely absurd. Two-and-a-half years, 30 to 35 appearances on a very simple dissolution is unacceptable, costly, and inexcusable. [¶] The court finds that the tactics by [Christine] were manipulations to obtain continuances." (*Id*. at pp. 1272–1273.)

Reversing, the appellate panel began with the undisputed facts: "Christine suffered from bipolar disorder, a potentially incapacitating

23

mental illness which may result in disability under the ADA." (*Marriage of James*, *supra*, 158 Cal.App.4th at p. 1273.) The panel then pointed to some confusion between the two judges involved as to who should be ruling on the rule 1.100 request at issue. According to the panel, Judge Wieben Stock acknowledged receiving a faxed note from Dr. Speare, Christine's psychiatrist, confirming she had in fact been hospitalized, but Judge Silbar was apparently never informed of this note. (*Id.* at p. 1270.) Not only was there miscommunication between the judicial officers involved about Christine's reported hospitalization, but more fundamentally Judge Wieben Stock failed to appreciate her duty and authority as the designated ADA coordinator to rule on the accommodation request.

In Judge Wieben Stock's view, granting Christine a trial continuance would have "fundamentally alter[ed] the nature of the service[,] program or activity" offered to litigants by undermining Judge Silbar's decisionmaking power to control her courtroom. (*Marriage of James*, *supra*, 158 Cal.App.4th at p. 1270.) This reading of rule 1.100 by Judge Wieben Stock was legal error. "Granting the Second ADA Request would not have interfered with Judge Silbar's power to control the courtroom because, as the superior court ADA coordinator, [she] had the power under California Rules of Court, rule 1.100(b) to decide the Second ADA Request." (*Id.* at p. 1275.) As a result of this error, "[n]one of the grounds listed in California Rules of Court, rule 1.100(f) for denying an ADA request for accommodation was present when Presiding Judge Wieben Stock denied the Second ADA Request." (*Id.* at p. 1277.)

Compounding that problem, Judge Silbar also erred as a matter of law. She found that Christine had "manipulat[ed]" the rule 1.100 process by seeking a trial continuance in the form of a second rule 1.100 request.

(*Marriage of James*, *supra*, 158 Cal.App.4th at p. 1272.)  But the appellate panel concluded Christine was fully within her rights to file the second request, since Judge Wieben Stock was the ADA Coordinator.  (*Id.* at p. 1274.)  Under circumstances where Judge Wieben Stock had yet to rule on a pending accommodation request, Judge Silbar found that Christine " 'has failed to do *anything* that would mandate or even require this court to consider another continuance.' "  (*Id.* at p. 1270, italics added.)  Judge Silbar's mistake on that point is why the panel concluded she failed to "make any of the determinations required under rule 1.100(f) to deny an accommodation request."  (*Id.* at p. 1276.)  Upon a close reading of *Marriage of James*, then, there was legal error on the part of both judicial officers involved.

Central to FSFG's position in this appeal is its view that *Marriage of James* justifies de novo review here.  That is incorrect.  The treatment of the standard of review in *Marriage of James*—which is limited to a couple of passing references to abuse of discretion in the description of James's arguments (see *Marriage of James*, *supra*, 158 Cal.App.4th at pp. 1272, 1276)—is unilluminating, since as we note above, abuse of discretion is not a unified standard and can mean different things in different contexts.  It seems evident that the appellate panel there gave no deference to the rulings by either Judge Wieben Stock or Judge Silbar because, for different reasons, both judges proceeded on incorrect legal premises.

We grant that *Marriage of James* has some broad similarities to this case—the nature of the disability for one, multiple continuance requests for another—but we view those similarities as superficial at best.  That case involved an unusual situation in which two judicial officers overlooked undisputed medical evidence of a pro se litigant's inability to appear at trial;

25

one of them failed to appreciate the nature of an ADA coordinator's role under rule 1.100; and the other failed to ground the denial of the requested accommodation on any of the three allowable legal bases for denial under rule 1.100(f). None of those problems is present here. There is no contention that the trial judge in this case ignored or overlooked evidence supporting FSFG's accommodation request, inappropriately deferred to another judicial officer, or failed to rule on grounds specified in rule 1.100(f).

Factually, the denial of FSFG's May 2023 accommodation request was supported by the record, and legally it was within the range of reasonable choices permitted by rule 1.100. In assessing whether, under rule 1.100(f)(3), a requested accommodation "fundamentally alter[s]" the nature of the services being provided, trial courts may properly take into account the impact of a requested accommodation on their ability to meet statutory calendaring priorities. There was such a concern here in light of the statutory priority the trial court had to keep in mind in its management of this CEQA proceeding.

But another point bears emphasis. Wholly apart from the fact that this is a case with statutory calendaring priority, another aspect of the record here has independent significance under rule 1.100(f)(2), and we would affirm under that provision even if, as in *Marriage of Jam*es, we were not dealing with a case that has special calendaring priority. In applying rule 1.100(f)(2)—where the court must assess whether the requested accommodation would place an "*undue* financial or administrative burden on the court" (rule 1.100(f)(2), italics added)—a discretionary balancing of competing considerations is required. The fact a rule 1.100 accommodation request is made by (or on behalf of) counsel of record, rather than a litigant,

26

is certainly an appropriate consideration, and may be decisive in striking that balance.

Why does this distinction matter to the rule 1.100(f)(2), "undue" burden calculus on this record? Fundamentally, it means that, in weighing the adverse impact of denying the requested accommodation against the burden on the court of granting it, the adverse impact on FSFG did not involve the kind of access to justice concerns we see in *Marriage of James*. In that case, Christine, a party representing herself, sought a trial continuance after her hospitalization, which deprived her of being present at her own marital dissolution trial and left her without any representation at the trial. No such dilemma arose in this case. Because FSFG was free to obtain other counsel, no credible argument can be made in this case that it was effectively denied access to court services.

Months before presenting its final request for scheduling relief in May 2023, FSFG obviously recognized as much. In October 2022, FSFG moved to reopen discovery and extend various deadlines, and it subsequently submitted a proposed order suggesting, as an alternative form of relief, that Garrett-Steinman be ordered to withdraw as counsel. The court declined to make such an order. FSFG's extraordinary suggestion that, if the court had concerns about Garrett-Steinman's need for more time, it should kick him off the case—surely, an invitation to commit error if there ever was one— points up a fundamental flaw in the position we are asked to adopt here. It was not up to the court to assess whether, in order to keep the case moving forward, Garrett-Steinman should step aside in favor of some other lawyer.

27

It was up to FSFG to make that decision, and at an even more basic level, it was up to Garrett-Steinman himself.[12]

Waving aside the history of prior accommodation requests leading up to its only unsuccessful rule 1.100 request, FSFG claims that because its "counsel was incapacitated by mental illness on account of his disabilities," it "was unable to advance its claims" and "the number of merits hearing continuances does not and cannot change that." According to FSFG, "[n]ot only is it impossible to say how the trial court would have viewed the merits of arguments that petitioner never made," but on review we cannot possibly "assess the strength of arguments petitioner was never permitted to substantiate with evidence." In support of this argument, FSFG relies heavily on *Biscaro*, *supra*, 181 Cal.App.4th 702, which reads *Marriage of James* as a structural error case (*id*. at pp. 709–710).

That reading makes sense, but only in context. The *Marriage of James* panel reversed without examining prejudice on a record where, by reason of an unrepresented person's disability, she was "denied the benefit of court services." (*Marriage of James*, *supra*, 158 Cal.App.4th at p. 1274.) "Unlike most legal error, structural error calls for reversal per se because the error prevents a reviewing court from ascertaining what might have happened absent the error." (*Biscaro*, *supra*, 181 Cal.App.4th at p. 710.) *Biscaro* "involve[d] not a denial of [a] motion [for accommodation] but a failure to rule on it," which, the appellate panel there said, "presents an even stronger argument for structural error" than the denial of access to judicial services in *Marriage of James* did. (*Ibid*.) There was no denial of

---

[12] California Rules of Professional Conduct, rule 1.16(a)(3), states, "[A] lawyer shall . . . withdraw from the representation of a client if: [¶] . . . [¶] (3) the lawyer's mental or physical condition renders it unreasonably difficult to carry out the representation effectively."

28

access to judicial services in this case.  Except for the request that Garrett-Steinman be relieved from any further meet-and-confer obligations—a request that appears to have been mooted once the trial court refused to allow a further continuance, since there was nothing further to meet and confer about—the trial court ruled promptly on the May 2023 accommodation request, and gave reasons in writing for the denial.

FSFG insists the trial court's stated reasons were wrong as a matter of law because the court erroneously thought a continuance is not a form of available accommodation under rule 1.100.  But that makes no difference because the court grounded its denial of FSFG's application on reasons permitted by rule 1.100(f).  In any event, "[w]e review the result the trial court reached, not its legal reasoning, and we may affirm on any ground supported by the record, unconstrained by the route the trial court took in getting there."  (*Apex Solutions, Inc. v. Falls Lake Ins. Management Co., Inc.* (2024) 100 Cal.App.5th 1249, 1257.)

Even assuming error in the trial court's articulated reasoning, we are not persuaded it was reversible error.  Absent a due process violation or some other error that undermines the fundamental fairness of the proceeding involved, appellate courts are not empowered to reverse without engaging in a prejudice analysis.  (Cal. Const., art. VI, § 13 [No judgment shall be set aside . . . in any cause . . . for any error as to any matter of procedure, unless, after an examination of the entire cause . . . the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice."]; see *Biscaro*, *supra*, 181 Cal.App.4th at p. 709.)

None of FSFG's complaints in this case come anywhere close to the procedural deprivations involved in *Biscaro* and *Marriage of James*.[13]

If FSFG truly had a new "magic bullet" sanctions argument, we expect the basis for that argument would have been identified and even previewed in its May 2023 rule 1.100 accommodation request. No such proffer was made. Prejudice analysis is not an exercise in assessing abstract possibilities. (*College Hospital Inc. v. Superior Court* (1994) 8 Cal.4th 704, 715.) Having reviewed the entire record, we see no reasonable *probability* that, had FSFG been given another opportunity to brief its request for sanctions or make a new motion for some other form of sanctions, it would have achieved a better outcome than it did. (*Ibid.*)

## IV. DISPOSITION

The judgment is affirmed. Respondents are awarded their costs on appeal.

STREETER, J.

WE CONCUR:

BROWN, P. J.
HITE, J.*

---

[13] *Biscaro*, *supra*, 181 Cal.App.4th at pp. 705–706 (restraining order entered following hearing in disabled pro se litigant's absence without ruling on his disability accommodation request); *Marriage of James*, *supra*, 158 Cal.App.4th at pp. 1264, 1271 (final judgment of dissolution with orders on child custody and visitation, asset valuation and division, and spousal support, entered following trial in disabled pro se litigant's absence).

* Judge of the San Francisco Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Trial Court: Superior Court of California, County of Sonoma

Trial Judge: Hon. Bradford J. DeMeo

Counsel: Garrett-Steinman Law Offices and Daniel P. Garrett-Steinman for Plaintiff and Appellant.

Rob Bonta, Attorney General, Annadel A. Almendras, Micaela M. Harms and Janelle M. Smith, Deputy Attorneys General, for Defendant and Respondent.

Bergeson, Daniel J. Bergeson; and John D. Pernick for Real Party in Interest and Respondent.